## BECK v. SIMMONS & KORNEGAY.

1. A Court of Chancery may refuse to rescind a contract where it would not specifically enforce it at the suit of the other party.

2. Where one proceeds in a contract for the exchange of lands, so far as to obtain the possession with knowledge of a defect in the title, he cannot afterwards object to the title as a reason for not completing the contract, unless there is unreasonable delay in procuring the title, or in curing the defect. If he knows that the defect can only be obviated by a judicial proceeding, the time stipulated for the completion of the contract will not be considered an essential ingredient. In such cases the question is not, whether the party is able to make title on the day stipulated, but whether there has been unreasonable delay in obtaining title.

3. If one purchases lands to which he knows the title is defective, accepts a deed for it, and goes into possession, he cannot afterwards rescind the contract for the defect in the title.

4. It is competent for the vendor to prove knowledge in the vendee of a defect in the title when the contract was made, as an excuse for not making the title at the time stipulated. Such proof does not vary the contract of the parties, though it may excuse its literal performance.

5. A sale of land by three Commissioners, made by order of the Orphans' Court, is valid under the act of 1822.

6. Where a mistake is made in the description of lands in a deed, which the party offers to rectify, there is no ground for the interposition of Chancery to correct the mistake.

Error to the Chancery Court of Sumter.

THE bill was filed by the defendant in error to rescind a contract entered into for the exchange of lands. The material allegations of the bill are, that on the 29th day of January, 1841, the parties entered into a written agreement for the exchange of lands. That the complainants agreed to convey certain lands, lying in Sumter county, in exchange for two tracts, lying in Clarke county. That the complainants executed their part of the contract by conveying to Beck by deed the lands in Sumter, and paid the sum of seven hundred dollars. That Beck executed his bond for title to the two tracts lying in Clarke county, with condition to make, within six months, a good and lawful title to complainants, to the lands in Clarke.

The bill further alledges, that Beck, under and by color of the agreement, did by deed, dated 16th February, 1841, convey to Simmons, one of the tracts called the Hamilton tract,

and by deed of the same date, conveyed to Simmons and Kornegay, jointly, the other tract, called the Kirkland tract.   That neither of the deeds so made, specified the land district, county or State, in which the lands pretended to be conveyed lie, so that the complainants are unable from the deeds to locate the lands.   The bill further alledges, that since the making of the said conveyances by Beck, they have ascertained that he has neither right, title or interest, either in law or equity, to the tract called the Kirkland tract, but that the same belongs to certain minor heirs of whom said Beck is guardian.   That as soon as they learned that Beck was unable to make a good title to the Kirkland tract, and as soon after the expiration of six months from the date of said bond, as they could conveniently, they (residing in Clarke county, and Beck in the State of Mississippi,) offered to relinquish possession and to reconvey all the lands pretended to be conveyed by him, if he would reconvey to them the lands he had received from them in exchange; which he refused.   The complainants also alledge, that it was material to them to have received a good title, at or before the expiration of the six months.

The answer admits the agreement for the exchange, as stated in the bill, and avers that in pursuance thereof, each party went into possession of the lands received in exchange, and that the complainants knew at the time the agreement was entered into, that the title to the Kirkland tract was in certain minor heirs of whom he was the guardian, and that the contract was made with the express understanding that he was to procure the title so as to be able to convey it by deed.   That it was arranged between the parties, that one Hatch, as the mutual agent, should prepare the respective deeds to be executed by each party.   That Hatch prepared the deeds, and he executed them in performance of the condition of the bond, and that Hatch as such agent received the deeds for and as satisfying the condition of the bond.   And that he repeatedly offered the complainants before the filing of the bill to execute any other deeds they would procure, with more full and certain description.

The answer further states, that after the exchange was made, such proceedings were had in the Orphans' Court of the County of Clarke, where the lands lie, that a sale of the lands com-

prising the Kirkland tract, was decreed in conformity with the provisions of law, and a sale thereof duly made on the 11th June, 1842, at which sale, the defendant acting for the interest and benefit of his wards became the purchaser, which sale was confirmed by the Court on the 13th June, 1842, and a title decreed to be made to him as the purchaser. That the commissioners did convey the land to him on the same day, and that he is now ready and willing to make the complainants a sufficient deed.

The answer admits the offer to rescind the contract, and his refusal, but insists that the complainants have had uninterrupted and quiet possession of the land from the time they were let into the possession. Several witnesses were examined, but it is not necessary to state it here, as it is adverted to in the opinion of the Court.

The Chancellor at the hearing, considering that testimony could not be adduced to vary the written contract of the parties, by showing that the complainants were aware of the condition of the title when the exchange was made, and also considering that the defendant had been guilty of unreasonable delay in procuring the title, decreed a rescission of the contract. This is now assigned for error in this Court.

BLISS & BALDWIN, for the plaintiff in error, made the following points:

The rescission of a contract is in the sound discretion of the Court under all the circumstances of the case. [2 Story's Eq. 4; 3 Cowen, 446; 2 Stewart, 370.]

Time is not of the essence of the contract. [2 Story's Eq. 85, 88; Litt. S. C. 115; 3 Peters, 210; 5 Howard, 686; 5 Cranch, 262; 6 Wheaton, 528.]

It is sufficient if the title is acquired after the day and before the decree. [Sug. on Ven. 365; 1 Peters, 465; 5th Howard, 680; Sug. on Ven. 370.]

When defects are known, the purchaser cannot have relief, especially if in possession. And when the purchaser enters into or proceeds in a treaty after he is acquainted with the defects in the title, and knows that the vendor's ability to make a good title depends on the defect being cured, he will be held to his bargain, although the time has expired and considerable

10

further time may be required to make a good title. [Sug. on Ven. 370; 5th Howard, 279; 3 Marsh, 335; 3 J. J. M. 583; Ib. 701; 1 Johns. C. R. 218; 2 Ib. 519; 7th Monroe, 202; 3 A. K. M, 288; 13 S. & R. 386; 5 Litt. S. C. 229; 2 Wheaton, 13; 5 S. & R. 204; 1 Fon. Eq. 288, in notes.]

Equity will not relieve after acceptance of, and where there is no fraud, for defects in the title known when the deed was received, especially if the purchaser is let into possession under the deed. [3 A. K. M. 334; Ib. 288; 5 Conn. 538; 5 Monroe, 439; 6 Ib. 230; 2 Edwards, 37; 3 J. J. M. 583, 701; 5 Howard, 284, 543.]

The complainant was bound to prepare a deed if he wished a more perfect one. [5 S. & P. 450.]

A Court of Chancery requires stronger reasons for setting aside an agreement, or delivering it up to be cancelled, than would be required to refuse a specific performance. [3 Cowen, 445, 530; 11th Peters, 248.]

That the proceedings of the Orphans' Court were regular. [See Clay's Dig. 224, § 16, 17, 19.]

. SALLE, contra. If the complainants have not waived time as essential, this Court cannot do it. Neither a Court of equity or law can vary mens' wills or agreements. [Fonb. 290; 3 Black. 435; Days, 272; Con. U. S. art. 1, § 10; 7th Vesey, 264; 6 Wheaton, 534; 1 Johns. Ch. 370; 4 Vesey, 686; 4 Peters, 329; 4 Cond. Eng. Ch. 432; 5 Cranch, 276; 7th Vesey, 202; 14th Peters, 173; 11 Johns. 525, 584; 13 Vesey, 224; 1 Madd. C. R. 415; 5 Cranch, 278; 9 Ib. 489.]

If Beck has not a good title to both tracts of land, his contract being entire, he would not be entitled to a specific performance. His title to the Kirkland tract was not good, for the Court appointed only three commissioners, where it should have appointed five. [9th John. 455; 5 Cranch, 262; 2 Wheaton, 299; Coke Litt. 215; b. Pothier on Ob. 110; 1 Madd. 430; 4 Cranch, 93; 2 Coke Litt. 434; 2 Johns, 109; 2 Cranch, 166; 6th Porter, 232; 9 Cranch, 65; 6 Wheaton, 579; Ib. 125.]

If he has a good title he cannot avail himself of it by his answer. The proceedings before the Orphans' Court is new matter, not responsive to any allegation or statement in the

Beck v. Simmons & Kornegay.

bill, and is an attempt to make an answer subserve the purposes of a cross bill. [5th Pet. 276 ; 1 V. & B. 524, 377 ; 6th Con. Eng. C. 40 ; 11th Peters, 249 ; 7 Ib. 274 ; 10 Ib. 209 ; 3 Swanston, 60 ; 3 Stewart, 237.]

The testimony adduced by the defendant is of loose, vague conversations before the contract was entered into, and were extinguished by it, and therefore inadmissible. [1 Johns. C. 273.] The testimony of Hatch is utterly incredible.

The merits of the case are reduced to a narrow compass, and may be thus stated : 1. Can Beck consistently with the principles of common honesty hold the lands conveyed by the complainants to him, they not having received the stipulated consideration.

2. Have the complainants a plain, adequate and complete remedy at law?—as it is clear they have not, this Court must interfere, or there will be failure of justice.

These propositions the counsel argued at great length, and in support of his views cited the following authorities : 2 Johns. Rep. 613 ; 9th Cranch, 489 ; 3 Stewart, 237 ; 4 Cranch, 136 ; 6th Wheaton, 534 ; 13th Vesey, 424 ; 16 Ib. 271 ; 3 Monroe, 329 ; 14 Peters, 32 ; Coop. Ch. C. 307 ; 1 Peters, 455; 2 Black. Com. 323 ; 9th Cowen, 154 ; 4th Mass. 349 ; Con. Eng. C. 357 ; 10th Vesey, 292, 306 ; 7 Ib. 21 ; 13 Ib. 581 ; 6th Peters, 98 ; 1 Johns. C. R. 517.

ORMOND, J.—The object of the bill is to rescind a contract entered into for the exchange of lands. The case has been argued by the counsel for the defendants in error, by whom the bill was filed, as if it was a proposition by the plaintiff in error to enforce the contract specifically, and he has endeavored to show, that under the circumstances of this case, the Court would not decree a specific performance. It is however well settled, that a Court of Chancery may refuse to rescind a contract, where it would not specifically enforce it. [Jackson v. Ashton, 11 Peters, 248 ; Mortlock v. Butler, 15th Vesey, 292 ; Seymour v. Delancey, 3 Cowen, 530.] It will not avail the defendants in error, if they could show that from the delay in this case the plaintiff would not be entitled to a performance of the contract. He is not seeking any thing at the hands of the Court, and the only ques-

tion therefore is, whether he has been guilty of such a violation of a contract, that the other party has the right to rescind it.

The parties agreed in writing, on the 29th January, 1841, upon an exchange of lands, the plaintiff in error agreeing to exchange two tracts of land lying in Clarke county for one belonging to the defendant in Sumter County. The plaintiff in error executed his bond promising to make title to the defendants, to the lands in Clarke county, in six months thereafter. And on the 16th February, 1841, the parties mutually executed to each other title to the lands so exchanged. Both parties went into an immediate possession of the lands exchanged. It appears very clear from the proof, that it was well known at the time of the exchange, that the title to the Kirkland tract was not in the plaintiff in error, but that the land belonged to certain minors of whom the plaintiff was guardian, and that it was expected and understood that he was to cause the land to be sold and procure his title.

It would be contrary to equity and good conscience, to permit one who proceeds so far in a purchase as to obtain possession, with knowledge of a defect in the title, to object afterwards, the want of title as a reason for not complying with his contract. If he knows that the defect can only be obviated by a judicial proceeding, it is impossible to suppose that the time stipulated for the completion of the contract, was considered by him an essential ingredient of the contract, as it could not be known what length of time it might take to obtain the title. The question therefore in such cases is not, whether the party was able to make the title on the day stipulated, but whether there was unreasonable delay in obtaining it. [Seton v. Slade, 7th Vesey, 265; Colton v. Wilson, 3 P. Wms. 190.]

Thus far the case has been considered as if it were an executory contract, but it appears to have been executed by the acceptance of a deed before the expiration of the time for making a complete title. The deed was prepared by one Hatch, acting as the agents of the defendants in error, and was received by him when executed by the plaintiff. It could not be tolerated, that one should purchase lands to which he knew the title was defective, accept a deed and go into the possession and

enjoyment of it, and then rescind the contract for the defect of the title. It was urged in argument that the circumstances surrounding the transaction, were conclusive to show, that Hatch exceeded his authority in taking the deed, and that his principals were not bound by his act. His deposition has been taken, and he states that he was the agent of the defendants in error, for the purpose of procuring the deed to be made, and we can discover nothing unreasonable or improbable in his statement. Nor is it alledged in the bill, that the agent exceeded his authority, but it is admitted that the deed was executed on the day it bears date—that the lands called the Kirkland tract, were so imperfectly described in the deed, that they were unable to locate them, and that since the execution of the deeds they had ascertained that the plaintiffs had neither right or title to the "Kirkland tract," and that as soon afterwards as they conveniently could do so, they offered to return the lands they had received and to rescind the contract, which the plaintiff had refused.

The case made by the bill, is not that the agent received the deed without authority, but that the discovery has since been made, that the plaintiff had no title to the land. The answer positively alledges, that the complainants had full knowledge of the true state of the title when the exchange was made, and the proof shows such to be the fact. This testimony was rejected by the Chancellor, because in his opinion it varied the written contract of the parties. If the case now stood upon the written contract of the parties by which the plaintiff was to make title in six months, it is not perceived that the reception of such testimony would violate the rule in question. It does not in the slightest degree add to or diminish the terms of the contract, but merely establishes the existence of a separate and distinct fact. Whatever influence it might, when established, exert over the contract, it no more alters or impairs it, than would the proof of infancy or any other distinct fact, which might prevent its enforcement or affect its validity. Certainly, however, when the attempt is made to rescind the contract for the defect of title, it is competent for the other party to show, that at and before its execution, the defect was well known. This is in truth the issue tendered by the complainants in their bill, not indeed directly, as it is

not expressly alledged that they were ignorant of the true state of the title when the exchange was made, but indirectly, by the allegation " that as soon as they learned that the said Beck was unable to make a good and lawful title to the Kirkland tract, they offered to redeliver possession, &c., to the said Beck."

If it be conceded that it was competent for the complainants, after the contract was executed, with knowledge on their part, that the title was in a third person, to rescind it, unless the outstanding title was extinguished, it certainly would not be permitted without giving the other party a reasonable time to procure the title. The plaintiff might well have supposed, that as the complainants had his deed with warranty, and as they were in possession of the land, there was no urgent necessity for taking immediate steps to get in the outstanding title. As soon as he was apprised of their dissatisfaction with the title as it thus stood, he appears to have acted with promptitude. It is not expressly alledged in the bill, or amended bill, when the demand of title and offer to rescind were made, but it appears from the answer to have been about the 4th of January, 1842. The title was finally obtained by the plaintiff on the 13th June, 1842, under a sale made by virtue of a decree of the Orphans' Court of Clarke county, and tendered to the complainants. We do not think this an unreasonable delay. As from the nature of the case it was necessary to apply to a Court of justice, the delays consequent upon such an application must be allowed.

The only objection here urged to the validity of title thus obtained, is, that the Orphans' Court appointed but three instead of five commissioners to make sale of the land. The act of 1820, (Clay's Digest, 196, § 22,) did require the appointment of five commissioners to make sale of real estate, when such sale was necessary for the purpose of more equal distribution among the heirs, which was the cause assigned for the sale in this instance ; but the act of 1822, (Clay's Dig. 225, § 19,) authorizing the Orphans' Court to order a sale of lands for this purpose, is silent as to the number of commissioners necessary to conduct the sale. It is then left to the discretion of the Court as to the number of the commissioners, and being subsequent in point of time, is, as to this particular a repeal of the former

law.   There is not therefore, any weight in this objection, and no other has been brought to our notice.

The alledged omission in the deed is, that it does not state the County, State, or land district in which the lands are situated, so that from the deed it is impossible to locate the lands.   There is no allegation that the omission was fraudulent, and it appears from the answer and proof, that the deed was prepared by the agent of the complainants.   The correction of mistakes is doubtless an appropriate head of Chancery jurisdiction, but to justify the application to that Court for this purpose, it should appear that the opposite party on application, refuses to make the correction or supply the omission, as was held by this Court in Long & Long v. Brown, 4th Ala. Rep. 622, and in subsequent cases.   There must exist a necessity for the interposition of Chancery.   Here, it appears, that the plaintiff repeatedly offered to supply the omission : there is therefore, no reason shown for the interposition of a Court of Chancery.                                   •

Our conclusion is, that the decree of the Chancellor must be reversed, and a decree be here rendered dismissing the bill.