JEREMIAH BRAINERD *vs.* SAMUEL ARNOLD AND OTHERS.

A tract of land was demised for a term of years, with " the quarry thereon and
the privilege of getting out stone in  the same; also the  privilege of  getting
out stone in any part of said tract, and to  use and occupy said tract  in  any
manner that the lessees may choose and for all  purposes  necessary and con-
venient for carrying on the quarrying business." The lease also provided
that the lessees should have the use of a certain wharf belonging to the lessor
for the purpose of hewing stones thereon and of shipping them, and  that the
rent of the land should be 7 per cent. of the value of  the stone quarried and
sold.  Held, that the lessees were not at liberty to work the quarry or not, as
they pleased, but were bound to improve it  in a reasonable  manner during
the term of the lease.

A court of equity will not correct a written contract on the ground of a mistake
in the drafting of it, unless the mistake was mutual.

Nor unless it appears that the party against whom the correction is sought, is
designing to take advantage of the mistake, or on request has refused to cor-
rect it.

Where  it was sought to correct a  lease by which exclusive possession of  cer-
tain land was  given to the lessee for a  term  of years,  by the insertion of a
provision against the  cutting of  timber on  the land, it  was held that such
provision was unnecessary, as by statute such cutting of  timber would be
waste, for which the lessee would be liable.

A finding of a committee upon  a  bill  in chancery, that the  plaintiff was in-
duced to enter into a contract by the fraud of the defendant, will not avail the
plaintiff where he has made no allegation of such fraud in his bill.


BILL in equity.

The plaintiff, on. the 19th day of February, 1853, had
leased to Samuel Arnold 2d and Isaac Arnold, two of the
defendants, a tract of land of about thirty acres, owned by
him in the town of Middletown, on which was a stone
quarry—the lease, after describing the premises, proceeding
as follows:—

"Together with the quarry or quarries thereon, and the
privilege of getting out stone in the same; also the privilege
of getting out stone in any part of said piece of land, and to
use and occupy said land  in  any  manner they may choose,
and for all the purposes necessary and. convenient for carry-
ing on the quarrying business, for the term of twenty years
from the first day of April, 1853: to have and to hold said
premises during said term of twenty years, to them the said

Arnolds, their heirs and assigns, to their own proper use and behoof; so that neither I, the said Brainerd, nor my heirs, nor any other person in my name or behalf, shall or will, during the term aforesaid, occupy or claim said premises or any part thereof; the said Arnolds paying the said Brainerd seven per cent. on the price of all the stone they may quarry or get out on said land and sell—the per centage to be reckoned on the value of the stone when quarried and unhewed or in the rough, payment to be made in a reasonable time after the sale of and payment for said stone, and not before. The said Arnolds are to have the use of my wharf and land on the west side of Connecticut river, [describing it,] for the term of twenty years aforesaid, for the purpose of putting stone on to be hewed and shipped therefrom, together with the right and privilege to build up and repair said wharf, as from time to time-may be necessary." The lease had been duly recorded in the town records of Middletown, and on the 9th day of June, 1856, the Arnolds had conveyed all their interest in the premises to David C. Burr, the other respondent, who had mortgaged the same back to them. Burr shortly after brought an action of ejectment against one Spencer, a tenant of a portion of the premises under Brainerd, in which action he recovered judgment. The case was afterwards carried to the supreme court, and is reported in the 26th of Conn. Reps., p. 159. The present bill alleged that the negotiations between the plaintiff and the Arnolds for the leasing of the premises, had reference solely to the leasing of the right to quarry stone upon the same, and that the Arnolds, to whom the plaintiff had left the preparing of the lease, had fraudulently drawn it in the form in which it was executed so as to secure the exclusive possession of the whole tract, and had imposed it upon the plaintiff, who was ignorant of the forms and effect of such instruments, and that the Arnolds now claimed that the same gave them an exclusive enjoyment of the premises for all purposes for the term of the lease—that a part of the premises was land used for farming purposes and important as such to the plaintiff but of no importance for quarrying purposes—and that the plaintiff in leasing the quarry had expected to derive large profits from

Brainerd *v.* Arnold.

the per centage to be paid him by the Arnolds, which was the only form in which rent was paid for the use of the land, but that the Arnolds, before the conveyance to Burr, and, since the conveyance, the latter, had almost wholly neglected to work the quarries, so that a very inconsiderable and inadequate sum had been received by him—and prayed that the lease be canceled and the defendants required to release the premises to him, or that it be corrected so as to limit the right conveyed by it to that of quarrying alone, and that the defendants be enjoined from cutting certain timber growing on the premises, which it was alleged that they claimed the right under the lease to cut.    The bill was dated July 31, 1857.

The case was referred to a committee, who found that the lease was drawn in accordance with the intentions of the parties, in all respects except as to the extent of the occupation which the lessees were to have during the term, as to which it was found that there was no agreement, as a matter on which their minds actually met, except that the lessees were to have the exclusive occupancy so far as the same should be necessary for the purpose of quarrying stone on the land demised; that the plaintiff did not know or suspect that he was conveying any more extensive right than this, while the lessees intended to have, and understood that they were to have, the exclusive occupation of the premises during the term.    The committee also found that the plaintiff was a man of dull apprehension and extremely ignorant of the forms of transacting business, especially by writings, and that the Arnolds were men of intelligence and well acquainted with the ordinary forms of doing business; that, when proposing to draw the lease themselves, the Arnolds stated to the plaintiff that they were acquainted with the forms of drawing leases for quarrying purposes in Haddam, where the Arnolds resided; and that the lease as drawn contained provisions with regard to the exclusive possession of the premises not usually inserted in the Haddam leases referred to.    The committee found however no positive evidence of actual fraud, but reported that if the court should be of opin-

ion that by the true construction of the lease the lessees were to have the exclusive occupation of the premises during the whole term, and were under no legal obligation to work the quarry at all, but were to work it or not at their discretion, there was a gross inadequacy of consideration for the lease, and from this and the inequality of capacity between the parties, he found that there was constructive fraud on the part of the defendants in procuring the lease from the plaintiff; and that, if such was not the legal construction of the lease, he did not find such fraud. It was further found that the defendants disclaimed all right to cut the timber growing on the premises except for quarrying purposes, and that they had not unreasonably neglected to work the quarries; also that Burr, at the time of taking his conveyance, had no notice of any agreement between the plaintiff and the Arnolds different from that expressed by the lease.

On the facts thus found, the case was reserved for the advice of this court.

*Chapman* and *Clark*, for the plaintiff.

1. The report shows actual fraud on the part of the Arnolds. Their relation to the plaintiff was a confidential one. They had solicited the privilege of drafting the lease and he had entrusted it to them. 2 Swift Dig., 54. *Miller* v. *Wells*, 23 Conn., 21, 33. 1 Sto. Eq. Jur., §§ 217, 218. They withheld from the plaintiff an explanation, which in the circumstances they were bound to have made, of the peculiar character of the lease and of its effect, which they fully understood. 1 Sto. Eq. Jur., §§ 308, 309. *Story* v. *Norwich and Worcester R. R. Co.*, 24 Conn., 94, 113. Roberts on Frauds, 129. The plaintiff was a weak-minded man, not conversant with the forms of business. The Arnolds took a fraudulent advantage of his condition in this respect. 2 Swift Dig. 63, 64. 1 Powell on Cont., 31. 2 id., 158. 1 Sto. Eq. Jur., § 242.

2. The inadequacy of consideration, taken in connection with the other circumstances, amounts to constructive fraud. On the facts stated by the committee and from which the

committee has contingently found fraud, the court should find fraud. 1 Sto. Eq. Jur., § 246. Newland on Cont., 358. 2 Powell on Cont., 151, 157.

3. The minds of the parties never met on this contract, at least so far as the point in controversy is concerned. Hence no legal obligation grows out of the contract. 1 Powell on Cont., 9.

*Tyler* and *Culver*, for the defendants.

1. There can be no relief on the ground of actual fraud, for it is found that none existed.

2. Nor on the ground of mistake, since the mistake was not mutual, and therefore there would be no actual agreement to correct the written one by. If the plaintiff never agreed to the terms of the contract as drawn, the Arnolds equally never agreed to it as he now seeks to make it. 2 Swift Dig., 56. It would be intolerable if a contract could be set aside or a title broken up, merely because, in the absence of all fraud or misrepresentation, one party understood the written contract incorrectly. So far as the timber is concerned, it is expressly found that we disclaim all right to take it except for quarrying purposes. It would be waste to cut it for any other purpose. Rev. Stat., tit. 1, § 284.

3. Nor on the ground of constructive fraud. This fraud is found by the committee only in case the court shall be of opinion that the lessees were not bound to quarry stone under the lease. It is clear that they are so bound. They hire the quarry on shares. The rent is payable only by a share of the profits. There is a clear implied agreement to work the quarries to a reasonable extent. If it were not so, yet the court can not grant relief on the ground of such constructive fraud, because the bill does not allege it, and the decree must follow the bill. Story Eq. Pl., § 257. *Gaylord* v. *Couch*, 5 Day, 223. *Skinner* v. *Bailey*, 7 Conn., 496. *Crocket* v. *Lee*, 7 Wheat., 522. *Carneal* v. *Banks*, 10 id., 181. *Piatt* v. *Vattier*, 9 Pet., 405. *Knox* v. *Smith*, 4 How., 298.

4. At any rate the court will not grant the relief against the defendant Burr, who is a *bona fide* purchaser for a valuable consideration, without notice of any equity in favor of the plaintiff. He has the legal title, and an equal equity, and therefore stands better than the plaintiff. 1 Sto. Eq. Jur., § 57 *a.*

STORRS, C. J. We are of the opinion that on the facts found by the committee in this case, in connection with the allegations of the bill, the plaintiff is not entitled to relief against any of the defendants. He prays for a cancellation of the lease set out in the bill, and a release to him by the defendants of all their right and title in the leased premises, or that the lease may be corrected so as to be limited to the purpose of quarrying only, and that the defendants may be enjoined to work the quarries in the demised premises in a judicious and proper manner, with such efficiency that the plaintiff may, during the continuance of the lease, receive annually a reasonable rent for the use of said quarries, and that they may also be enjoined against cutting or carrying away any of the wood and timber growing upon said premises, and from doing any act inconsistent with the true meaning of said lease so to be corrected.

It appears that more than three years after the lease was executed and recorded, the defendants Samuel and Isaac Arnold conveyed all their interest in the demised premises to the other defendant Burr. If that is to be deemed a conveyance for a valuable consideration paid by the latter, and without notice on his part of the facts which are claimed by the plaintiff to entitle him to relief, we are clearly of the opinion that as against Burr no such relief can be granted, on the ground that he has the legal title, and at least an equal equity with the plaintiff, which, by a familiar rule of equity, must prevail over the merely equitable title of the plaintiff. The allegations of the bill on this subject, and consequently the finding of the committee which conforms to those allegations, are perhaps too general to justify us in the conclusion, either that a valuable consideration was paid by Burr for

that conveyance, or that he had no notice of the facts relied on by the plaintiff. Although it was not questioned on the argument, but assumed by the counsel on both sides that he paid such a consideration and had no such notice, neither of these facts is either alleged or denied in the bill. There is apparently no particular answer filed in the case, and consequently the hearing must be deemed to have been had upon a general denial of the facts stated in the bill; and such a denial would not embrace an averment of the payment by Burr of a valuable consideration or of a want of notice. The bill states that, on the day of the conveyance to him, he mortgaged the premises to the Arnolds to secure the payment of three thousand dollars and interest thereon, and the committee finds that the latter transferred their interest in the premises to Burr and that he mortgaged the same back to them at the time and in the manner set forth in the bill, and that Burr, at the time of receiving said transfer, had no notice of any other or different agreement between the Arnolds and the petitioner than that set forth in the lease. If Burr, at the time of the assignment to him, only mortgaged back the premises for the whole consideration of it, or if he paid only a part of the consideration and mortgaged them back to secure the residue, he would not, in the first case, stand in the situation of a purchaser for a valuable consideration, having paid no money, or, in the latter case, of a purchaser to any greater extent than the amount which he then actually paid; and it would seem to be the fair import of the finding that such mortgage was given for the security of the whole or a part of such consideration. In regard to the finding on the subject of notice to him, it is to be regarded or not by us as the fact of such notice is or is not to be deemed by us to be fairly in issue on the pleadings in the case. Those pleadings are so loose and indefinite that we are strongly inclined to think that the decision of the case should not be placed on the ground that Burr was a purchaser without notice. And we are the more inclined not to do so, because we are satisfied that, were this a case only between the original parties to the lease, the plaintiff is not entitled to any relief.

As the fraud or mistake complained of by the plaintiff did not take place in the original making of the contract which was afterwards professed to be reduced to writing by the instrument of lease, but only in the expression of the terms of the contract as embodied in that instrument, the plaintiff clearly is not entitled to an entire cancellation of the lease, or a release from the Arnolds of their right and title to the leased premises. The most that the plaintiff can claim is, not that the real contract shall be annulled, but that the instrument embodying it shall be corrected so as to express truly such real contract. The first particular in which the bill alleges that the lease in this case did not conform to the real agreement between the parties, is, that the lease gives to the Arnolds the absolute right, during the term, to the exclusive possession or occupation of the premises described in it, and not the right merely of getting out or quarrying the stone on those premises. We did indeed decide, in *Burr* v. *Spencer*, (26 Conn., 159,) that the terms of the lease now in question do not restrict the lessees to the right of occupying the premises for the sole purpose of getting out and quarrying the stone in the land. But in the present case it is not found that they have ever used, or claimed or intend to use, the land for any other than that purpose; nor does it appear that they have ever been requested by the plaintiff or refused to make any correction of the lease. And under these circumstances we have held that a court of equity will not, without any necessity, in the exercise of the discretion by which they will be governed in such cases, interpose in the manner here claimed. *Thompsonville Scale Co.* v. *Osgood*, 26 Conn., 16. It is furthermore decisive on this point, that it is not found that there was any mutual mistake between the parties in regard to the extent or character of the occupation which the lessees were designed to have of the leased premises. Without such mistake the plaintiff can not claim to have the lease corrected; for, if it were made to conform to his own exclusive understanding as to its terms, it would obviously vary from that of the other party, and therefore would not correspond with the real agreement between them, or, in

other words, with any matter upon which their minds actually met. This of course would be not a correction of an agreement, but a substitution of a new one. On this ground the plaintiff is precluded from the right to have the lease corrected in this particular. For it is also found that, although the plaintiff, when he executed the lease, did not know or suspect that he was conveying any greater right or privilege than the occupancy of the land so far as it should be necessary for the purpose of quarrying the stone in it, the lessees intended to have, and understood that they were to have, the exclusive right of occupying it unrestrictedly during the term. To the claim that the lease should be corrected so that the lessees and their assigns should be expressly restricted from cutting or carrying away from the land the timber and wood growing or standing upon it, it is a sufficient answer, in the first place, that it is neither alleged in the bill nor found by the committee that such a restriction was any part of the original agreement. But, in the second place, if it was, such an express restriction would be wholly unnecessary in order to prevent the commission of those acts, and would therefore be superfluous; for it is provided by the 284th section of the act for the regulation of civil actions, (Rev. Stat., tit. 1,) that " every person who, having no greater interest in real estate than an estate for years, or for life, created by the act of the parties and not by the act of the law, shall commit waste upon the premises, beyond what tenants for years or life, created by operation of law, may do, shall be liable to the party injured in an action on the case, unless he is expressly authorized by the contract under which such interest is created to do the acts complained of." As we have no doubt that under this statute the lessees of the plaintiff and their assigns would be liable, as they would clearly be if their estate had been created by operation of law, for cutting or carrying away the timber and wood growing upon the land demised, it is quite unnecessary that there should be any reformation of the lease in this respect. If any such waste should be meditated it would now be a proper ground for an injunction. It is not however alleged

in the bill that the lessees have ever committed or meditated such waste. Indeed, it is stated that they have never claimed the right to do so; and, in regard to the defendant Burr, the allegation in the bill that he has done or threatened such waste is expressly negatived. It is also found that all the respondents have disclaimed any right to cut or use the wood on the premises except for quarry purposes, and for those purposes their right to do so has not been questioned. This constitutes a decisive answer against the claim for a correction of the lease and the granting of an injunction in regard to said wood and timber. It is however claimed by the plaintiff that he was induced to enter into the contract by the fraud of the lessees. It would be sufficient to say that no fraud, as it respects the making of the contract, is alleged in the bill. All the averments of fraud in it respect only the reducing of the contract to writing; and, as already remarked, the latter kind of fraud would be a ground only for the correction of the instrument, and not its cancellation. As therefore the bill does not state any fraud which would justify the annulling of the contract, the finding in regard to such fraud, if it would otherwise be sufficient for that purpose, should be rejected, as it is not founded on any allegations in the bill. If however such were not the case, we think that the report of the committee discloses no fraud, either actual or constructive, for which the lease should be annulled. All actual fraud is negatived. In regard to constructive fraud, the committee finds that there was such fraud on the part of the lessees in procuring the lease from the plaintiff, if, by the true construction of the lease, the lessees were to have the exclusive occupation of the leased premises, and were under no legal obligation to work the quarries in it at all, but were at liberty to work them or not at their option. And they report that they find such constructive fraud, in that case, from the fact that there would be a gross inadequacy of consideration for the lease, and from the relative inequality of capacity between the plaintiff and the lessees. It is generally the province of a committee to present the facts upon which the court are to decide whether

fraud is constructively to be inferred, rather than to find whether such fraud exists. But, as the fraud is here found hypothetically only on the facts presented, it becomes necessary for us to decide whether, by the true construction of this lease, the lessees were bound to work the quarries or had a discretion on the subject. We are of the opinion that, as the rent reserved in the lease was a certain fixed proportion of the price of the stone which the lessees might get out of the land and sell, to be paid to the lessor in a reasonable time after it should be sold and paid for, the lessees were under an obligation to improve the quarries in a reasonable manner during the term of the lease. The case is analogous to the letting of land upon shares, as it is termed, where it would hardly be claimed that it is optional with the lessee whether he will cultivate the land or not. The very nature of the contract in these cases implies that the property leased is to be cultivated for the mutual benefit of the lessor and lessee. This being the case there was no constructive fraud on the part of the lessees according to the finding of the committee. It is further found that the Arnolds, while in the occupation of the premises, did not unreasonably neglect to work the quarries, and the allegation in the bill that Burr, the other defendant, has been guilty of neglect in that respect is also found untrue. We therefore see no ground or occasion for the injunction prayed for in regard to the working of the quarries.

We therefore advise that the petition be dismissed.

In this opinion the other judges concurred.

Bill dismissed.