Filed November 29, 1892.

---

## No. 15,459.

## POPIJOY *v.* MILLER ET AL.

APPEAL.—*Assignment of Error.*—*Demurrer.*—*Variance Between Assignment and Record.*—Where error is assigned for overruling appellant's general demurrer to appellee's complaint, and the record does not show the filing of any such demurrer, but does show the filing of a several demurrer, which was overruled, such assignment of error presents no question for consideration in this court.

CONVEYANCE.—*Mistake.*—*Reformation of Deed.*—A party having conveyed away land through mistake must have the deed corrected before he can recover on his equitable title. If one is not entitled to a reformation of the deed he is not entitled to a recovery.

CONCLUSIONS OF LAW.—*When Erroneous.*—Where conclusions of law are improperly deduced from the finding of facts, and can not on any theory be sustained by the finding of facts, such conclusions of law are erroneous.

SAME.—For the finding of facts and the conclusions of law in this case, see opinion.

Popijoy *v.* Miller *et al.*

DEMAND.— *When Necessary.—Reformation of Deed.*—Before suit can properly be brought for the reformation of a deed a demand for its reformation must be made.

DEED.—*Reformation of.—Mistake.—Recovery.*—If by fraud or mistake in a conveyance of land more land was included than should have been, the proper remedy is to have the deed reformed, and recover the part improperly conveyed.

From the Wells Circuit Court.

*A. N. Martin* and *E. C. Vaughan,* for appellant.

*L. Mock* and *A. Simmons,* for appellees.

OLDS, J.—This was an action brought by the appellees, Nancy A. Miller, John A. Miller, Henry C. Miller and James Miller, against the appellant, Lawson Popijoy. The complaint is in three paragraphs. The first and third paragraphs allege a mistake in a deed, by which too much land was conveyed, and seeks to have it reformed and to quiet appellees' title to the surplus land described in the deed. The second paragraph alleges that the appellees "are the owners and entitled to the possession" of certain real estate, describing it, containing $10\frac{77}{100}$ acres, asking possession and for damages for the detention.

Demurrers were filed to each of the first and second paragraphs of the complaint, which were overruled and exceptions reserved. Issue was joined by general denial. There was a trial by the court. A special finding of facts and conclusions of law were stated by the court. Exceptions were entered to the conclusions of law. A motion was made by appellant for judgment in his favor on the special findings, which was overruled and exception taken. There was also a motion for a new trial, which was overruled and exception taken, but the evidence is not in the record. There are numerous errors assigned for the purpose of reviewing the several rulings of the trial court. Some of the errors are properly assigned, and some are not. The assignment of error on the ruling of the court

on the demurrers to the first and second paragraphs of complaint presents no question.　The demurrer was a several demurrer to each paragraph, while the assignment of error is that the "court erred in overruling appellant's general demurrer to the first and second paragraphs of plaintiff's complaint."　The record does not show the filing of any such demurrer, and it has been held by this court that such an assignment presents no question when the ruling was on a separate demurrer to each paragraph.　*Ketcham* v. *Barbour*, 102 Ind. 576.

The exceptions to the conclusions of law, we think, properly present the question as to whether the appellees were entitled to the judgment rendered in their favor on the issues joined by the pleadings in the case.

The finding of facts shows that Eleanor Miller, widow and mother of the appellees, who died in 1880, owned a tract of land in Wells county, containing $150\frac{83}{100}$ acres, described in the deed under which she held title as part of sections 12 and 13, in township 26 north, range 12 east, commencing at the southeast corner, of the northeast quarter of said section 13, thence west 40 chains and 19 links, thence north 33 chains and 23 links, thence east 17 chains and 40 links, thence north 25° east 18 chains and 64 links to the Wabash river, thence up said river to where the east line of said section 13 crosses the said river, and thence south 35 chains to the place of beginning.　As shown by maps attached by counsel for appellees to their brief, and referred to and conceded to be correct, the Wabash river at the point where the description line running 25° east 18 chains and 64 links to the Wabash river intersected the river; the river runs almost directly east for a short distance then turns abruptly south and runs in a southerly direction for a distance of probably 15 chains, then turns abruptly to the east and continues in an easterly direction until it crosses the east line of said section 13, thirty-five chains north of the south-

east corner of the northeast quarter of said section 13. Thus it will be seen that the north boundary of the land was composed of irregular lines.

A line run from where the river turns to the east, as above described, west across the land would cut 10 and a fraction acres off the north end of said land. Prior to the death of Eleanor Miller she signed, acknowledged, and caused to be delivered to one Steudebaker a deed conveying to her son James Miller, one of the appellees, 80 acres off the east side of the $150\frac{33}{100}$ tract of land, the west line to run far enough from the east to contain 80 acres, and at the same time directed said Steudebaker to deliver the deed to James at her death, which was accordingly done. She died seized in fee simple of the remainder of the land and it descended to her children, the appellees. James procured a survey to be made of the land, and, instead of running the west boundary line of his land clear to the north end of the land, the surveyor only ran it to a point directly west from where the river turns to the east, and thence east to the river, and along the river to where the east section line of section 13 crosses the river. James Miller afterwards sold the 80 acres to the appellant, conveying the same by the description used in the deed to him. Afterwards, in the settlement of the estate of Eleanor Miller, deceased, the children and heirs, the appellees herein, agreed to sell to the appellant $5\frac{66}{100}$ acres of the land which had descended to them from their mother, the same to be a strip off the east side of said tract owned by them and adjoining the 80-acre tract on the west, extending across the tract from north to south, and wide enough to contain $5\frac{66}{100}$ acres. Some question was made as to the validity of the appellant's title to the 80 acres, and it was agreed that the appellees should make a quitclaim deed to him, including in it a description of the 80 and the $5\frac{66}{100}$-acre tracts.

The survey of the 80 acres, as made by James Miller,

excluded 10 and a fraction acres on the north end of said tract of land that was included in the description in his deed, and included 10 and a fraction acres on the west of and adjoining said 80, as described in his deed, that was not conveyed to him by his deed. Regarding the survey as made by James, as fixing the correct boundary line of the 80 acres on the west side thereof, the parties procured a surveyor, who took the west boundary line as fixed by the survey of James as the east line of the $5\frac{66}{100}$ sold to appellant, and ran the west boundary line far enough therefrom to include $5\frac{66}{100}$ acres, extending across the tract at that point from north to south, and included the description of the two tracts in a quitclaim deed, which appellees executed to appellant. The appellees thus made conveyances conveying the portion of the whole tract lying west of the $85\frac{66}{100}$ acres, as erroneously surveyed, to appellee, Henry C. Miller, and conveyed the 10 acres lying on the north of such 80, as erroneously surveyed, to appellee, Nancy C. Miller. Afterward, appellant asserted his title to the 10 acres on the north, under his deed from James Miller, procured a survey, and took possession of the same.

This action is brought to correct the quitclaim deed and to recover the 10 and a fraction acres lying to the west of the $85\frac{66}{100}$ acres in fact sold to the appellant, and owned by him, and between it and the tract sold to appellee, Henry C. Miller.

The court states, as a legal conclusion, that the appellees are not entitled to a reformation of the deed. That appellees are the equitable owners of $10\frac{77}{100}$ acres off the west side of the 80 acres as erroneously surveyed by appellee, James, and entitled to the possession thereof, and that the appellees are entitled, on their complaint in this action, to recover from appellant the west half of said 10 acres; or, as stated, they are entitled to recover the possession of the west $5\frac{11}{100}$ acres of the 80 acres.

There is a finding that the appellees acted in good faith,

and believed the erroneous survey properly fixed the boundaries of the original 80 acres, but that the appellant knew, at the time, of all the transactions subsequent to receiving his original deed from appellee, James Miller; that his said deed from James included the north 10 and a fraction acres, and did not include the same amount on the west side of the tract, as erroneously surveyed, and knew that appellees were ignorant of any error in the survey, but purposely refrained from saying anything about it.

On no theory or conclusions to be drawn from the finding of facts can the conclusions of law stated by the court be upheld.

If the appellees were not entitled to have their deed reformed, and recover the land erroneously described in it, it must be on the theory that the first and second paragraphs of the complaint proceed upon the theory of and allege a mutual mistake, when the facts, as found, show a mistake on the part of appellees and a knowledge on the part of the appellant, and that he refrained from disclosing the facts to the appellees, and practiced a fraud upon them in procuring the deed for more land than he was entitled.    Whether or not, after obtaining the deed under such circumstances and then asserting his title to the 10 acres included in his original deed, he can hold the additional 10 acres he procured to be described in his new deed to perfect his title, under the claim that his title was imperfect, and under claim that the additional 10 acres belonged to him, is not presented for our decision, for the reason that the complaint does not proceed upon that theory.    The 10 acres having been conveyed, either through mutual mistake or on account of fraud on the part of the grantee, the deed must be set aside before the party can recover.

It appears, as we think, clear, from the facts found, that it was the intention of the parties, or the appellees, at

Popijoy *v.* Miller *et al.*

least, to sell and convey $5\frac{66}{100}$ acres next adjoining on the west of the 80 acres which the appellant in fact owned and described in his original deed; and if the appellees are entitled to recover at all in this action, they are entitled to recover the 10 and a fraction acres off of the west side of the tract as conveyed by their quitclaim deed, leaving the appellant owning the 80 acres originally purchased, and $5\frac{66}{100}$ acres adjoining thereto.

The appellees, having conveyed away the land, though they did so through mistake, must have the deed corrected before they can recover it. Having conveyed away the legal title, they can not recover on their equitable title except they reform the conveyance by which the legal title passed, and take from it the erroneous part which carried the legal title. The second paragraph alleges that appellees are the owners of the real estate.

It is contended that this is sufficient to support a recovery on an equitable title. It is not necessary that we decide this question, for to recover on an equitable title in this case, it would be necessary to make a case in equity entitling the appellees to avoid and set aside the deed made by them conveying away the land, and this court held that they were not entitled, under the facts, to that relief. But the case proceeded and was tried upon the theory that there must be a reformation of the deed and it set aside and avoided and a recovery of the land; and this is no doubt the true theory on which it should have been tried, for if, by either fraud or mistake, there was more land included than should have been, the deed should have been reformed and a recovery had. If they were not entitled to a reformation they were not entitled to recover. There is no finding of fact showing any demand for a reformation of the deed before suit was brought. This was held necessary in *Axtel* v. *Chase*, 77 Ind. 74. See Ballard's Annual of the Law of Real Property, sections 370 and 371; *Koons* v. *Blanton*, 129 Ind. 383.

The conclusions of law are erroneous. Being of the opinion that justice will be best subserved by instructions to the Circuit Court to grant a new trial rather than to restate the conclusions of law, judgment is reversed with instructions to the Circuit Court to grant a new trial.

