DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

## DURING THE YEAR 1906.

### Charles W. Braithwaite, et al. v. William P. Henneberry.

#### Gen. No. 12,275.

1. SPECIFIC PERFORMANCE—*when will not be awarded.* Specific performance of a contract to erect a building will not be awarded.

2. REFORMATION—*what not prerequisite to.* In order to obtain reformation it is not essential that prior to institution of suit for that purpose application for correction of mistake be made to the opposite party.

3. REFORMATION—*what does not exclude equitable jurisdiction.* The mere fact that a remedy at law exists does not exclude the jurisdiction of equity to reform.

4. ASSESSMENT OF DAMAGES—*when court upon denying specific performance should not retain bill for.* Where specific performance of a contract to erect a building is denied, the court does not err in refusing to retain the bill for the purpose of assessing the damages for the non-performance of the contract where the entire bill is framed upon the theory of the existence of the contract in question.

Bill for specific performance. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

**Statement by the Court.** The appellants, Charles W. Braithwaite and the Chicago Sample Company, filed a bill

407

against appellee December 24, 1903, which bill, as amended, alleges, in substance, that July 28, 1903, the defendant Henneberry executed to the complainants a certain lease, a copy of which, marked Exhibit A, is attached to the bill and made a part thereof, and that at the same time Imogene Braithwaite and complainant Charles W. Braithwaite, her husband, executed to defendant a mortgage of certain premises, to secure payment of the rent reserved by the lease, a copy of which mortgage is attached to and made a part of the bill. The demised premises are described in the lease as follows: "The following described premises situate and being in the city of Chicago, County of Cook and State of Illinois, to-wit: Lots fifteen (15) and sixteen (16) in Block forty-one (41), School Section Addition to Chicago, in Section sixteen (16), Township thirty-nine (39) north, Range thirteen (13), east of the third (3rd) principal meridian." The bill avers that, by a clerical error of the scrivener, in writing the number of the range, the word "thirteen (13)" was written instead of fourteen, as the number of the range wherein the township containing the land is, which error was unknown to any of the parties to the lease, etc. It is unnecessary to set out more fully the averments as to the mistake in the description of the leased premises, as the mistake is not denied by appellee's counsel.

The term created by the lease is twenty years from on or about November 1, 1903, and the rent reserved is $7,300 per annum, payable in equal monthly installments.

The lease contains the following:

" 13th.    The lessor agrees to remove the old structure now on demised land and subject to and within the limitation of cost hereinafter specified to erect thereon a modern, sprinkled mill building, to extend over the entire land and six stories and basement in height, and of sufficient strength in each floor to support and carry the maximum weight of two hundred (200) pounds per square foot of floor area, and equip the same with one freight elevator, one passenger elevator and a steam heating plant and radiation on all floors, which said heating plant and radiation shall be sufficient to heat all parts

Braithwaite v. Henneberry.

of said building to seventy degrees Fahrenheit, when the temperature is at zero; also proper stairways and fire escapes and necessary plumbing, sewers and sidewalks, the said building and equipment to be erected in a first-class and workmanlike manner throughout, and in accordance with city ordinances, and to be completed ready for occupancy as soon as possible, and to cost, including the electric generator hereinafter mentioned, and apparatus or machinery for power therefor, not to exceed sixty thousand ($60,000.00) dollars; it being agreed that prior to the completion of the plant for said building, the lessees shall have access to the plans and specifications at all times, and may have such additions and alterations made in said building which are of the nature of permanent improvement thereto, as lessees may require; provided such additions and improvements shall not increase the cost of said building and equipment in excess of said sum of sixty thousand ($60,000) dollars, and further provided that the lessor shall not be called upon to furnish any interior partitions except those necessary to enclose stairs and elevators and toilet rooms, or any further interior finish, except such as lessor may deem necessary for the improvement or protection of his property.    In the event the said building shall not be completed until after November first, nineteen hundred and three (1903), it is agreed between the parties hereto that a pro rata rebate of the rental hereunder shall be allowed to the parties of the second part at the rate of $608.34 from November 1st, 1903, until the time said building is completed, it being agreed between the parties hereto that the failure to complete the said building on or before November 1st, 1903, shall not make void or invalidate this lease, but the lessor agrees to proceed promptly to erect the said building, and to proceed with the erection thereof with all reasonable ability, and to complete said building on or about December 15, 1903, provided there is no interference or delay on account of strikes or the act of God."

The bill avers that Henneberry had plans prepared for a six-story building, in accordance with the foregoing, which he submitted to complainants, and which were approved by them; but, subsequently, he represented to complainants that the cost, according to said plans and the specifications, would

exceed $60,000, when complainants consulted with Henry Wittekind, an architect, who said the building could be erected for $60,000 or less, and complainants referred said Wittekind to Henneberry, who entered into a contract with Wittekind to draw plans and specifications for the building, on Wittekind agreeing that it would not cost more than $60,000; that Wittekind took bids from responsible persons, which showed that the building could be erected for $54,666, of which Henneberry was immediately advised, but, since November 11, 1903, he has taken no steps to contract with any of the bidders; but has requested Wittekind to hold the bids open, if possible, till such time as he, Henneberry, would be ready to proceed with the erection of the building; that, since November 15, 1903, complainants have frequently requested Henneberry to proceed with the erection of the building, but on one pretence or another he has delayed, although December 15, 1903, when, by the terms of the lease, the building was to have been completed, has passed; that one purpose of said lease was the occupation of part of said building by complainant, the Chicago Sample Co., whose business is too large for its present quarters, and that, unless said building shall be completed by May 1, 1904, complainants will be greatly inconvenienced; that the rental value of said building, when erected, compared with present rental values, will amount to a net profit to complainants, for the term of twenty years, of $100,000; that complainants are ready and anxious to perform their covenants and agreements shown in said lease; that they have furnished to defendant a guaranty of title to the premises mortgaged as aforesaid, which cost $150, one-half of which was paid by complainants, as they agreed. Defendant has never delivered possession of the leased premises, but remains in possession thereof, and the erection of said building has been delayed solely by defendant's negligence and delay in the premises. The prayer is that the aforesaid mistake in the description of the demised premises may be corrected, that the agreement, as reformed, may be specifically performed, and that, in the event that defendant shall refuse to proceed with the erection

Braithwaite v. Henneberry.

of the building, complainants may be awarded compensation and damages for all outlays by them made, in and about the execution of the lease, as reformed, and that thereupon complainants' liability, by virtue of said lease, be declared ended, and that said mortgage be released, and that complainants may be declared to have a lien on said leased premises for all damages, etc., which may be found due to them from the defendant, and that defendant may be enjoined from making any disposition or conveyance of, and from encumbering, said premises to the prejudice of complainants' claim, etc., and for general relief.

The defendant, Henneberry, demurred generally to the amended bill, the court overruled the demurrer, and defendant having elected to stand by his demurrer, the court decreed as follows:

"This cause coming on to be heard upon complainants' amended bill of complaint herein, and the demurrer of the defendant, and the same having been argued by counsel, and the court having duly considered the same, the said demurrer is by the court overruled;

WHEREFORE the defendant, William P. Henneberry, saving his exception to the ruling of the court, elects to stand by his demurrer.

And the court finds that, on the 12th day of May, A. D. 1904, the defendant, William P. Henneberry, by his counsel, came into open court, and delivered to Charles W. Braithwaite and Imogene B. Braithwaite a release, discharge and satisfaction by said William P. Henneberry, of the mortgage complained of in said amended bill of complaint, and therein marked 'Exhibit B.'

Wherefore, the court does further find the complainants are entitled to have the contract marked 'Exhibit A' corrected and reformed to conform to the true intent of the parties thereto.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the said contract, marked 'Exhibit A' referred to in complainants' amended bill of complaint, be, and the same is hereby corrected and reformed, by inserting in said agreement 'Exhibit A,' in that part of said agreement

pertaining to the description of the property in said agreement described, the words 'range fourteen' instead of and in place of the words 'range thirteen,' wherever the latter may appear in said 'Exhibit A.'

And the court finds that complainants are not entitled to any other or further relief."

James J. Barbour and Furber & Wakelee, for appellants.

Sears, Meagher & Whitney, for appellee; James F. Meagher, of counsel.

Mr. Presiding Justice Adams delivered the opinion of the court.

The main purpose of the bill is to obtain specific performance by appellee of his undertaking to erect a six-story building on the demised premises, as provided in the lease; in other words, to perform his part of the contract actually made by the parties, and, as incidental to this relief, to correct the mistake in the lease, so that the writing will express the contract actually made. The questions presented are, whether the demurrer should have been overruled, and, if so, whether the court erred in not granting any relief except the correction of the description of the premises in the lease. In passing on the question whether the demurrer was properly overruled, we can look only to the demurrer and the bill. What the court finds transpired between the parties in open court, namely, the delivery by appellee to appellant Braithwaite and Imogene, his wife, of a release of the mortgage mentioned in the bill, cannot affect the question. The question raised by the demurrer is: Is the bill sufficient to entitle the appellants to any equitable relief, and if so, what? Complainants' counsel argue, not strenuously, but rather faintly, that their clients are entitled to a decree for specific performance; that a court of equity will specifically enforce a contract for the erection of a building such as that described in the lease. We are of opinion that the current of authority is to the contrary, and is based on sound reason. In 3

Pomeroy's Eq. Jurisprudence, sec. 1405, top page 450, it is said: "Finally, the contract must be such that the court is able to make a decree for its specific performance, and is able to enforce its own decree when made," and in note 2 to the section, under the heading, "Cases where the court cannot enforce its decree," is the following: "Contracts whose performance would be continuous, and would require supervision and direction, e. g., contracts for building, for construction of works, railroads and the like; for working mines, quarries, etc.," citing numerous cases, among which are Beck v. Allison, 56 N. Y., 366; C. & S. R'd Co. v. Watson, 126 Ind., 50; Danforth v. Philadelphia & Cape May Ry. Co., 30 N. J. Eq., 12; Wharton v. Stoutenburgh, 35 id., 266. These and other cases cited fully support the text. Barnes v. Ludington, 51 Ill. App., 90, and Suburban Construction Co. v. Naugle, 70 id., 384, are to the same effect.

The court, however, had jurisdiction to reform the lease so as to make it conform to the real contract between the parties. Henkelman v. Peterson, 154 Ill., 419. In that case the court say: "The jurisdiction of a court of chancery to so correct mistakes in contracts and agreements as to make them express the actual intent of the parties, is one of the ancient and well established heads of the jurisdiction of that court," citing numerous cases. We do not understand counsel for appellee as disputing the doctrine thus announced; but counsel contend, in support of cross-errors assigned by appellee, that the bill is insufficient to warrant reformation of the lease, because it does not aver that the appellee was requested and refused to correct the mistake, and that there is an adequate remedy at law. In support of the proposition that the bill is insufficient in not averring request and refusal to perform, counsel cite Beck v. Simons, 7 Ala., 71; Harold v. Weaver, 72 ib., 373; Axtel v. Chase, 77 Ind., 74; Brainerd v. Arnold, 27 Conn., 617, and Popijoy v. Miller, 133 Ind., 19. Long v. Brown, 4 Ala., 622, is the leading case in that State in support of appellee's contention, and is referred to in subsequent Alabama decisions; but the authority of that, and cases following it, is very

much weakened by the opinion in Robbins v. Battle House Co., 74 Ala., 499. In that case the complainant alleged that there was a mistake in a lease executed to him by the Battle House Co., the defendant, in that only a part of the premises actually intended to be leased was described in the lease, and prayed a reformation of the lease in accordance with the intent and actual contract of the parties. The bill also averred that an action in forcible detainer had been brought by the defendant against the complainants, in which the defendant's attorney claimed that the lease was only of the premises therein described, and the justice so held, and complainant was, therefore, unable to defend, etc. There was no averment in the bill of a request to the defendant to correct the mistake. The defendant demurred, assigning as cause for demurrer that the bill failed to aver that the complainant had applied to him to correct the mistake. The court say: "Long v. Brown, 4 Ala., 622, was the case of a bill filed to correct a mistake in the description of part of a tract of land, which Brown had contracted to convey to Long. The answer admitted the mistake, and averred that he, Brown, was never advised of it until the filing of the bill, and that he would have corrected it at any time, if applied to. The court said: 'To give a court of equity jurisdiction to enjoin a judgment at law, until a mistake of this kind could be rectified, application should have been made to the vendor to make it, and on his refusal that court would interfere, if necessary, to prevent an injury from that cause.' No authority was cited in support of this assertion. In Beck v. Simmons, 7 Ala. 71, and in Lamkin v. Reese, ib., 170, the same doctrine was asserted, referring to Long v. Brown for authority, and to no other adjudication. The same doctrine is asserted in Kerr on Fraud and Mistake, in a note on page 419, but it refers to the cases cited from 7 Ala. alone. We have been cited to no decisions in other States, nor to anything in elementary writers, nor have we been able to find anything anywhere said, which sustains these views. Many cases arise, and are likely to arise, where corrections of mistakes could not be made, by reason of the

incapacity of the parties to make binding contracts or corrections. We submit if it is not a much better rule, in all such cases, to retain the bill until the correction is made; and if the bill was filed without previous request, and unnecessarily, let the costs be taxed against the complainant."

In Brainerd v. Arnold, *supra,* the case was not decided on the ground that the bill did not aver a request to the opposing party to reform the lease, but on the ground that it was not found by the committee to whom the cause was referred, that there was any mutual mistake between the parties, in regard to the subject-matter. 27 Conn., p. 624. In Axtel v. Chase, *supra,* the bill, which seems to be very inconsistent, alleged, among other things, a mistake in the description of the premises in a deed, and prayed reformation of the deed. The court, in its opinion, say: "A cause of action simply to correct the alleged mistake in the deed is not shown, because no demand and refusal to make the correction are alleged." Citing only Bishop v. Brown, 51 Vt., 330. In that case, the suit was to recover money paid by the plaintiff to the defendant by mistake, and it not appearing that the defendant had been guilty of any fraud, or that he had any knowledge of the mistake before suit brought, the court held that there could be no recovery, in the absence of proof of a demand before bringing suit, saying: "But where the overpayment arises from the mistake or negligence of the party making it, and without the fault or knowledge of the party receiving it, it is reasonable that the party so receiving the overpayment should not be subject to a suit until he has been notified of the overpayment, and called upon, and had a reasonable opportunity to rectify the mistake." In Popijoy v. Miller, *supra,* the suit was for reformation of a deed, and the court, in the conclusion of its opinion, say: "There is no finding of fact showing any demand for a reformation of the deed before suit is brought. This was held necessary in Axtel v. Chase, 77 Ind., 74. See Ballard's Annual of the Law of Real Property, sections 370 and 371; Koons v. Blanton, 129 Ind., 383."

It seems reasonable that a party claiming a mutual mis-

take in a contract, without the fault of either party to the contract, should, before putting the other party to the expense of defending a suit for the reformation of the written contract, apply to that party for a correction of it; but no Illinois case has been cited, nor do we know of any, in which it has been held that this is a condition precedent to commencing suit for a reformation of the contract, and this not being a court of last resort, we decline to so hold. In Kelly v. Galbraith, 186 Ill., 593, 607, the court apparently intending to point out all that is necessary to be shown, to warrant the correction of a mistake in a written instrument, say: "That a court of equity has jurisdiction to reform a written instrument upon the ground of mistake is too well settled to need discussion. In order, however, to justify the reformation of a written instrument upon the ground of mistake, three things are necessary: first, that the mistake should be one of fact, and not of law; second, that the mistake should be proved by clear and convincing evidence; and third, that the mistake should be mutual and common to both parties to the instrument. (Purvines v. Harrison, 151 Ill., 219; Warrick v. Smith, 137 id., 504; Lindsay v. Davenport, 18 id., 375; Thompson v. Ladd, 169 id., 73.) The three requisites necessary to the reformation of a written instrument by reason of a mistake therein, as such requisites are above designated, exist in the present case. The mistake here was a mistake of fact, and was common to both parties to the instrument, and is established by clear and convincing proof."

Counsel for appellee contend that appellants have an adequate remedy at law, because in a suit at law for damages for breach of the contract, they might show the mistake by parol evidence; but this does not exclude jurisdiction in equity to correct the mistake. In Kelly v. Galbraith, *supra,* the misdescription in the lease was of the lot number, viz: 129 instead of 123, and the mistake was quite as susceptible of being shown by parol proof as is the mistake in the present case, yet the lower court decreed reformation of the lease, and the decree was affirmed.

Conceding, for the purpose of the argument, that in a suit at law to recover damages for a breach of the contract by appellee, complainants might prove the mistake in the lease, this would not be an adequate remedy, nor the equivalent of reformation. The written instrument would still remain unreformed. Complainants are the owners of a twenty-years' term of the premises; they may sublet the premises or assign the lease and their interest therein, with the consent of the appellee, and their interest in having the written instrument express the real contract cannot be measured by the right, if such exists, to prove the mutual mistake in a suit at law for damages. We cannot sustain the contention of appellee's counsel that the court being unable to decree specific performance, it was error to decree reformation of the lease. Mutual mistake in a written instrument is, itself, substantive ground for relief, and the fact that other relief prayed cannot be granted is no reason for refusing relief in respect to the mistake. The court properly overruled the demurrer.

Complainants' 5th and 6th assignments of error are:

"5.   The court erred in not entering a decree against the defendant for damages, by reason of his breach of the covenants of said lease."

"6.   The court erred in not setting the case down for hearing, for the purpose of assessing damages caused by the wrongful breach by the defendant of his covenants in said lease."

The argument of appellants' counsel is in harmony with these assignments, and is based largely on the finding of fact by the court heretofore referred to. Counsel, in their argument, say: "Furthermore, by giving said release, appellee admitted that he was guilty of a breach of all his covenants in the lease, and intended not to keep them." This is said in reference to the release of the mortgage by appellee, which is found as a fact in the decree. As previously stated, the question raised by the demurrer is, whether the facts stated in the bill are sufficient to entitle

appellants to equitable relief, and, in determining this question, we must look solely to the bill, and not to the finding by the court of a fact not averred in the bill. Any other practice would be anomalous, illogical, unscientific and unprecedented. The bill is drafted on the theory that the contract is in force and not rescinded, abandoned or repudiated by either party. Complainants, by asking that specific performance be decreed, affirm the contract. Axtel v. Chase, 77 Ind., 74, 79. It is also averred that the appellee has not rejected any of the bids for the erection of the building, but has requested Wittekind, the architect, to hold the bids open until such time as said Henneberry shall be ready to proceed with the erection of the building. By the specific prayer of the bill, damages are prayed only in the event that specific performance shall be decreed, and appellee shall refuse to comply with the decree. The bill being framed on the theory that the contract was in force and that appellee might erect the building as provided by the lease, it is apparent that the entire delay in its erection could not be known until its completion, so that if the court should have allowed damages for delay, it could only have been for the delay from December 15, 1903, the time provided for the completion of the building, until the date of the decree, and thus, on the hypothesis that damages for delay may be allowed, complete justice between the parties could not have been attained. While the court may and perhaps should, in some cases, retain a cause for the assessment of damages, rather than turn the parties over to a court of law, the precise question which we are called on to determine, is whether the omission of the court so to do in the case before us, is or not reversible error. Time is not made of the essence of the contract to erect the building; neither does the contract contain any provision for damages for delay in the erection of the building. The complainants, by affirming the contract, and by averring "that complainants have fulfilled every requirement of Exhibit A as reformed, and have done all that is required of them to have said building erected, and they hereby offer to do whatever they may be required to do by

Exhibit A as reformed, and they tender the rent mentioned in Exhibit A as reformed," and by other averments, are, as we think, precluded from claiming that the court should have decreed the repayment to them of the $500 which was due to appellee, on the execution of the lease, and which they aver they paid, or the $75 which they aver they agreed to pay and paid, as their proportion of the cost of a guaranty of the title of the premises described in the mortgage to secure payment of the rents.    It is not averred in the bill that any other outlays were made or moneys expended by appellants.

We are of opinion that the chancellor did not err in omitting to retain the bill for an assessment of and decree for damages.    We do not concur in appellants' contention that the court should have decreed a release of the mortgage executed to secure payment of the rents.    The bill being an affirmance of the contract, as heretofore stated, and framed on the theory that the contract was in force, such a decree would have been unwarranted.

The decree will be affirmed, appellants to pay the costs of this court and the Superior Court.

*Affirmed.*