| 74 | 499 |
|-----|-----|
| 137 | 198 |

</div>

# Robbins *v.* Battle House Company.

*Bill in Equity for Reformation of Lease.*

1. *Reformation of writing on ground of mistake; previous request and refusal to correct.*—Where the alleged mistake is disputed by the defendant, or where a request to correct it would have been vain and useless, a bill in equity may be maintained without alleging such previous request and refusal; and the court, doubting the correctness of the rule laid down in *Long v. Brown* (4 Ala. 622), which was followed in *Beck v. Simmons* (7 Ala. 71), and *Lumkin v. Reese* (7 Ala. 170), "submits if it is not a much better rule, in all such cases, to retain the bill until the correction is made, and if the bill was filed without previous request, and unnecessarily, let the costs be taxed against the complainant."

2. *Answer construed, as to admission of mistake and offer to correct.* These averments, in an answer to a bill for the reformation of an alleged mistake in a written lease: "Defendant has never refused to reform said lease, and to make the necessary correction in it, and alleges that no application was ever made to respondent by complainant to do so, and that he would, at any time, if applied to, have corrected any mistake in said lease, and is still ready and willing to do so, if applied to by complain-

ant,"—fall very far short of admitting the alleged mistake, and offering to correct it.

3. *Injunction of judgment in unlawful detainer, but not writ of restitution.*—The unsuccessful defendant in an action of unlawful detainer, having taken an appeal to the Circuit Court, and then filed a bill in equity to correct an alleged mistake in his lease, may restrain the further prosecution of the action at law until the determination of the suit in equity; but, not having given a *supersedeas* bond (Code, § 3711), the issue of a writ of restitution on the judgment will not be enjoined in the meantime.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 10th April, 1884, by Martin C. Robbins, against the Battle House Company, a domestic corporation, the owner of the property in Mobile known as the Battle House; and sought the reformation of the complainant's lease of the property, by the correction of an alleged mistake in the description of the leased premises, and an injunction of further proceedings under a judgment, in an action of unlawful detainer for the possession of the property, which the defendant had recovered before a justice of the peace. The lease, a copy of which was made an exhibit to the bill, was for the term of five years, commencing on the 1st October, 1880, and ending on the 1st October, 1885; and the leased premises were therein described as "all the second story of the building known as the Battle House, and all the bar-room, billiard-room, bath-rooms, laundry, and all parts and portions of said Battle House on the first floor which are now used by M. C. Robbins as a part of the hotel, for use and occupation by said lessees as a hotel." The bill alleged that the lease was intended to include the entire hotel building (except certain parts of the first floor), embracing the second, third, fourth and fifth stories; that the written lease failed to describe the premises correctly through a mistake on the part of the draughtsman, since deceased, who was the president of the defendant corporation; that the lessees were placed in possession of the entire property under the lease, and the complainant continued in the uninterrupted possession until the institution of the action of unlawful detainer against him; that the mistake in the lease was not discovered by the complainant until on the trial of that action, when the attorney for the plaintiff corporation insisted that the lease only covered the designated parts of the building, and the justice of the peace so ruled and decided. The bill alleged, also, that the complainant had taken an appeal from the judgment of the justice of the peace, but would be unable to defend his possession as to the portions of the premises omitted from the lease, on the trial in the Circuit Court, without a reformation of the lease; and he therefore prayed that the lease might be reformed, and that the defend-

[Robbins v. Battle House Company.]

ant might be enjoined and restrained "from further prosecuting said judgment in said unlawful detainer suit, and from suing out any writ of possession or execution thereon for the enforcement of said judgment."

The action of unlawful detainer was commenced on the 24th March, 1884; and the judgment of the justice of the peace, which was rendered on the 2d April, 1884, was in these words: "Came the parties," &c., "and issue being joined, and trial had, upon the evidence and full consideration thereof, I find the said Martin C. Robbins guilty of an unlawful detainer, as complained against him by said Battle House Company; and I therefore order and adjudge, that said M. C. Robbins restore to the said Battle House Company the possession of the said tenement, and every part and portion thereof, mentioned in the complaint—say, that certain tenement in Mobile known as the Battle House, also the bar-room, billiard-room, bath-rooms, laundry, and all portions and parts of said building on the first floor as are used as part of the hotel, and all of the second story of said building known as the Battle House, and also the second, third, fourth and fifth stories; and that the defendant pay the costs of this proceeding."

The defendant filed an answer to the bill, incorporating therein a demurrer for want of equity; one of the causes of demurrer specially assigned being "that said bill fails to allege that the complainant ever applied to the defendant to reform said lease, or to correct said alleged mistake therein." As to the existence of the alleged mistake in the written lease, the answer contained these averments: "It is true that the complainant has, since October, 1880, used and occupied the whole of said building, except certain portions of the first floor, as a hotel. It is also true, however, that said lease only covers the second story of said building, and certain designated rooms of the first floor; and that said lease was drawn up by Thomas N. Macartney, then the president of said company, who is now dead. What his intention was in leasing said hotel partly by written lease, and partly by verbal lease, this defendant does not know, and can not account for it. He may have intended to include in the lease the whole of the Battle House building, that is to say, the third, fourth and fifth stories thereof; and defendant believes that such was the intention, and that they may have been omitted by mistake, accident, or inadvertence; but this defendant has no means of knowing what the contract of renting was, further than is shown by said written lease. Defendant says that complainant signed said lease in his individual name, and has had possession of it for more than three years and a half last past, and must have well known its contents and terms; and yet he has never applied to this defendant

[Robbins v. Battle House Company.]

to reform said lease, or to correct any mistake therein alleged to have been made. And defendant says that, although the fact that said written lease does not include the third, fourth and fifth stories of the building, was directly brought to the attention of the complainant on the trial of said action before the justice of the peace, yet complainant did not then, and has not since that time, applied to defendant to reform said lease, or to correct said alleged mistake. . . Defendant shows that it has never refused to reform said lease, and to make the necessary correction in it, and it shows that no application was ever made to it by complainant to do so; and defendant says that it would, at any time, if applied to, have corrected any mistake in said lease, and is still ready and willing to do so, if applied to by complainant."

After answer filed, the chancellor dissolved the injunction, on motion, citing *Hamilton v. Adams* (15 Ala. 596), and *Powell v. Plank-road Co.* (24 Ala. 441); and his decree is now assigned as error.

R. P. DESHON, for appellant.—A court of equity will reform a written instrument, so as to make it speak the intention and true contract of the parties; and will restrain proceedings at law, founded on the defective instrument, until the mistake is corrected. It is admitted that, generally, before filing a bill to correct a mistake, the party must make application to his adversary for a voluntary correction of it; but, where the mistake is only discovered on the trial of the action at law, when it is urged as a ground of recovery, it operates in the nature of a surprise, and the injured party may at once file his bill to enjoin the judgment. He is not chargeable with *laches* until the discovery of the mistake.—*Reynolds v. Dothard*, 7 Ala. 667. The complainant is in possession under his lease, and has taken an appeal from the judgment of the justice; but he can not successfully defend his possession in the Circuit Court, without a reformation of the lease, any more than he could before the justice. A judgment in an action of unlawful detainer may be enjoined like any other judgment.—*Lamb v. Drew*, 20 Iowa, 15. A sufficient ground to restrain the further prosecution of the action at law, necessarily involves and requires an injunction against the issue of a writ of possession, or restitution; otherwise, the complainant may be turned out of his possession, and kept out of possession for the remainder of his term, awaiting the result of this suit; a result which would work irreparable injury to him, while the defendant can at any time avoid delay by admitting and correcting the mistake.

TOULMIN, TAYLOR & PRINCE, *contra.*—There is no equity in

[Robbins v. Battle House Company.]

the bill, because it shows that the complainant has never applied to the defendant for a correction of the alleged mistake in the lease, and that the defendant refused to correct it. *Long v. Brown*, 4 Ala. 622; *Lamkin v. Reese*, 7 Ala. 170; *Beck v. Simmons*, 7 Ala. 71; Kerr on Fraud & Mistake, 419, note. The bill shows, too, a want of diligence which is fatal to relief in equity.—*Bowden v. Perdue*, 59 Ala. 409. The judgment of the justice was for the entire property, and not merely for the portions thereof alleged to have been omitted by mistake from the lease; and when the lease is reformed, no facts are alleged which show that, on another trial, the judgment will be different. The complainant himself can dismiss his appeal, and thereby put an end to the action at law; and he shows no ground whatever for staying the writ of restitution, the issue of which he might have prevented by giving a *supersedeas* bond.—High on Injunctions, §§ 98, 175, 325; *Womack v. Drew*, 50 Ala. 5; *Hamilton v. Adams*, 15 Ala. 596.

STONE, J.—*Long v. Brown*, 4 Ala. 622, was the case of a bill filed to correct a mistake in the description of part of a tract of land, which Brown had contracted to convey to Long. The answer admitted the mistake, and averred that he, Brown, was never advised of it until the filing of the bill, and that he would have corrected it at any time, if applied to. The court said: "To give a court of equity jurisdiction to enjoin a judgment at law, until a mistake of this kind could be rectified, application should have been made to the vendor to make it, and on his refusal that court would interfere, if necessary, to prevent an injury from that cause." No authority was cited in support of this assertion. In *Beck v. Simmons*, 7 Ala. 71, and in *Lamkin v. Reese*, *Ib.* 170, the same doctrine was asserted, referring to *Long v. Brown* for authority, and to no other adjudication. The same doctrine is asserted in Kerr on Fraud and Mistake, in a note on page 419, but it refers to the cases cited from 7 Ala. alone. We have been cited to no decisions in other States, nor to anything in elementary writers, nor have we been able to find anything, anywhere said, which sustains these views. Many cases arise, and are likely to arise, where corrections of mistakes could not be made, by reason of the incapacity of the parties to make binding contracts or corrections. We submit if it is not a much better rule, in all such cases, to retain the bill until the correction is made; and if the bill was filed without previous request, and unnecessarily, let the costs be taxed against the complainant.

In the later case of *Black v. Stone*, 33 Ala. 327, this court modified, if it did not change, the rule declared in *Long v. Brown*. That was a case of alleged mistake in the draught of a written

[Robbins v. Battle House Company.]

contract. This court said : " When this mistake was discovered by the complainants, they should, in the absence of any excuse for the omission, have called upon the vendors for the correction of the mistake. The bill avers neither a request for the correction of the mistake, nor any reason for its omission." This case is an authority for the doctrine, that facts or circumstances may excuse the failure to first request the correction of the mistake, before filing a bill for the purpose. Certainly, if parties had not legal capacity to make the correction, or disputed the alleged mistake, or refused to correct it, either of those would excuse previous request. The law does not require a vain or fruitless thing, any more than it frowns on a needless plunge into a law-suit.

The Battle House Company, lessor, instituted a suit in unlawful detainer, against Robbins as lessee, seeking to evict the latter from the premises, which were occupied and kept as a hotel. There was a written lease, by the terms of which the occupancy was to commence October 1st, 1880, and to continue five years. The proceedings in unlawful detainer were instituted in April 1884, when about one and a half years of the agreed term were unexpired. The Battle House is a building of five stories. The entire building, except parts of the ground floor, or first story, have been used by the lessee, as the hotel, during the entire term, up to the present time. The complaint in unlawful detainer counts on a written lease for five years, of the second story of the building, and designated parts of the first story, and complains that, as to these, the lease has been forfeited, according to its express provisions, by non-payment of rent. As to the third, fourth and fifth stories of the hotel, the complaint alleges that Robbins was tenant at will, or at sufferance, and that the tenancy had been terminated by notice to quit. The lease, in terms, mentions and lets only the second story, and designated parts of the first. It is silent as to the third, fourth, and fifth stories. It is thus shown that, as to the first and second stories, the right of recovery is based on the forfeiture of the lease, conceding that, when it was entered into, it was valid and binding for the entire term of five years. As to the third, fourth and fifth stories, the claim is, that the tenant was in for no definite term—that he was a mere tenant at will, or sufferance, which was determinable at any time, at the mere will of the landlord. There was a recovery of the entire premises in the trial before the justice of the peace, and an appeal to the Circuit Court, where the cause is still pending, awaiting a trial *de novo.*

The present bill was filed to reform the lease. It alleges that, by the agreed terms, the letting was of the entire building, less certain parts of the first story, not used as part of the

[Robbins v. Battle House Company.]

hotel; and that by mistake the third, fourth and fifth stories of the building were omitted from the writing. It is further alleged, that said omitted stories have been occupied by the lessee as part of the hotel, ever since the letting, and as part of the leased premises, and that no complaint has been made by the lessor on that account. It is further alleged, that the mistake was not discovered by the lessee, until the trial of the unlawful detainer suit before the justice of the peace.

The draughtsman of the lease, who, as president of the Battle House Company, made the contract of letting, died before these suits were instituted.

The answer, while it expresses a belief that the mistake charged was made, nevertheless professes ignorance of the intention of the draughtsman, and neither admits nor denies the mistake. It adds: "Defendant shows that it has never refused to reform said lease, and to make the necessary correction in it, and it shows that no application was ever made to it by complainant to do so; and defendant says, that it would, at any time, if applied to, have corrected any mistake in said lease, and is still ready and willing to do so, if applied to by complainant." This falls very far short of admitting the mistake, and offering to correct it. A readiness and willingness to correct *any mistake* in the lease, none being in terms admitted, is not the equivalent of an admitted mistake, and an offer to correct it.

It is contended for appellee, that inasmuch as the justice of the peace decided the entire claim for the plaintiff—that covered by the written lease, as well as the part omitted—the reformation of the lease is a matter of no importance to the appellant. That would probably be so, if the judgment of the justice of the peace was final. But it is not. There has been an appeal to the Circuit Court, where the case is to be heard *de novo*. The appellant has the right to have the true contract he made passed on and considered by the Circuit Court, when the case comes up for trial in that court. We can not know the Circuit Court will rule as the justice did. We think the present bill shows a sufficient excuse for not calling on the appellee to correct the mistake, before filing his bill; and the answer of defendant does not relieve it of the imputation of fault.

The decretal order of the chancellor, on the question we have been considering, is reversed, and the injunction reinstated, so far only as to enjoin the further prosecution of the suit of unlawful detainer in the Circuit Court, until the further action of the Chancery Court is had, pursuant to this opinion. If the alleged mistake in the draught of the lease was made, and we suppose it was, the Battle House Company should not be per-

[Robbins v. Battle House Company.]

mitted to prosecute their suit of unlawful detainer in the Circuit Court, until the lease is so far reformed as to express its agreed terms.

When the appeal from the justice's judgment was prayed and obtained to the Circuit Court, the appellant had the right to execute a *supersedeas* bond, and thus prevent the issue of a writ of restitution.—Code of 1876, § 3711. Such bond is required to be in the penalty of double the annual rental value of the premises. The penalty of such *supersedeas* bond, in this case, would probably have been twenty thousand dollars. If the Circuit Court should affirm the justice's judgment, then the plaintiff could, on motion, recover judgment in the Circuit Court "against the appellant and his sureties on the bond, for the value of the rent of the premises pending the appeal, and also the costs." This is a very valuable statutory right, secured to plaintiffs who are successful in the primary court, and is in keeping with the summary nature of the remedy it is intended to aid. It secures to successful plaintiffs, in such appeal cases, full indemnity and redress, without the delay and expense of a new and independent suit.—Code, § 3713. The appellant below, complainant in this suit, had the statutory right to give this bond, thus preventing the issue of a writ of restitution. He did not avail himself of it, but seeks to accomplish the same result by an injunction. Suspension of such writ of restitution, unlike the reformation of the lease, is, in no sense, a necessary condition to a fair trial of the unlawful detainer in the Circuit Court. If it were, then the proper *supersedeas* bond should have been given in the first instance. The chancery powers invoked to reform the lease, do not vary this question. The equity, the only equity of the present bill, is the claim it asserts to have the lease reformed. Injunction of the unlawful detainer suit in the Circuit Court, is necessary to give that relief its proper effect. This necessity extends no farther, for the equity of the bill extends no farther. It was complainant's fault, or misfortune, that he did not, when he appealed, give a *supersedeas* bond. The present bill shows no right to enjoin the writ of restitution.—1 Pom. Eq. § 171.

In the other phase of the bill—that which prays an injunction of the suit on the notes—there is no equity.

Reversed and remanded, to be proceeded in according to the principles hereinabove declared.