## Barnes v. Ludington et al.

1. OPTION CONTRACTS—*Right to Fix the Penalty of a Bond*.—Where parties entered into an option contract for a lease of premises for ninety-nine years at a yearly rental of $15,000, and upon which a building was to be erected by the lessee of the value of $300,000, within a time specified in the contract, for the construction of which a good and satisfactory bond was to be given, but no amount was fixed for the penalty of the bond, *it was held*, that the contract contemplated that the parties giving the option should have the right to decide within reasonable limits what the amount of the bond should be.

2. SPECIFIC PERFORMANCE—*Requisites of the Contract*.—To enable a court to enforce the specific performance, the contract must be certain in all its material provisions. The court can not make a contract for the

parties; that must be done by the parties themselves; and if they have failed to do so in any material respects, the court can not supply for them what they have left unprovided for.

3. SPECIFIC PERFORMANCE—*Contracts Not Susceptible of—Illustration.*—An agreement, as for instance, the building a house of a certain value, is not one which a court will direct to be specifically performed.

**Memorandum.**—Bill for specific performance. In the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Bill dismissed for want of equity; complainant brings error. Heard in this court at the March term, 1893, and affirmed. Opinion filed July 12, 1893.

The opinion of the court states the case.

BRIEF OF PLAINTIFF IN ERROR, MORAN, KRAUS & MAYER, ATTORNEYS.

The plaintiff contended that the option of August 25, 1891, resting as it did, upon a consideration paid, though not of itself imposing any obligation upon plaintiff in error until she should signify her intention to claim the right she had purchased, was yet binding upon defendants in error. It was an offer, for the refusal of which within the time limited, plaintiff in error had paid the agreed price. If within that time she accepted the offer, there then arose between the parties a completed contract imposing mutual obligations, which a court of equity will specifically enforce. Waterman on Spec. Perf., Sec. 200; Fry on Spec. Perf., 3d Ed., Sec. 445; Beach on Mod. Eq. Juris., Sec. 587; Johnston v. Tripp, 33 Fed. Rep. 530; Hawralty v. Warren, 18 N. J. Eq. 124; Miller v. Cameron, 45 N. J. Eq. 95.

When plaintiff in error, on December 31, 1891, notified defendants in error of her election to accept the terms of the option, and of her readiness and willingness to discharge the obligations which it imposed upon her, and tendered the $5,000, it devolved upon defendants in error to prepare, execute and tender the lease, and indicate to plaintiff in error the kind of bond that would be satisfactory to them. Buckmaster v. Grundy, 1 Scam. 310; Headley v. Shaw, 39 Ill. 354; Cooper et al. v. Hamilton, 52 Ill. 119; Baston v. Clifford, 68 Ill. 67; Tinny v. Ashley, 15 Pick. 546;

Doyle v. Harris, 11 R. I. 539; Longworth v. Taylor, 1 Mc-Lean (U. S. C. C.) 395.

BRIEF OF DEFENDANTS IN ERROR, PENCE & CARPENTER,
ATTORNEYS.

The rule established in this State is that specific perform-ance of a contract as to real estate will not be enforced un-less it appears that the complainant is not, and that the defendant is in default at the time of filing the bill, and that the complainant is ready, able and willing to perform the contract on his part.   Doyle v. Teas, 4 Scam. 202, 265;  Brown v. Cannon, 5 Gil. 174; Board of Supervisors v. Henneberry, 41 Ill. 179; Phelps v. Ill. Cent. R. R., 63 Ill. 468; Cronk v. Trumble, 66 Ill. 428; Kimball v. Tooke, 70 Ill. 553; Brink v. Steadman, 70 Ill. 241; Hoyt v. Tuxbury, 70 Ill. 331; Brix v. Ott, 101 Ill. 70; Woods v. Evans, 113 Ill. 186.

A contract which provides that a good and satisfactory bond shall be given for construction of a building, means that a bond satisfactory to the owners of the property should be furnished.   The power is reposed in the owner to deter-mine what is a good and satisfactory bond.   Here a bond was offered with one surety, and he a non-resident, and no evidence has been offered by plaintiff in error upon whom the burden rested, that the bond was good as to surety and amount, and none to show bad faith on the part of defend-ants in error in refusing to accept the bond tendered.   The evidence shows that the plaintiff in error understood that the agreement required her to furnish bond with sureties, and that she and her solicitors acted accordingly.   Singerly v. Thayer, 108 Pa. 296; Seeley v. Welles, 120 Pa. 74; Zaleski v. Clark, 44 Conn. 224; Gibson v. Cranage, 39 Mich. 49; Harris v. Miller, 6 Sawyer, 319.

A court can not make a contract for the parties.   All the terms and provisions of this lease were not agreed upon. The penalty of the bond was not agreed upon.

The plans and specifications of the lease were not agreed upon.   This rendered the contract uncertain and incapable of specific performance.   Brace v. Wehnert, 25 Beav. 348; Taylor

v. Portington, 7 De G., M. & G. 328; Stewart v. Lond. & N. R. R., 15 Beav. 513; South Wales Ry. Co. v. Wythes, 5 De G., M. & G. 880; Hodges v. Horsfall, 1 Russ. & Myl. 117; Huff v. Shepard, 58 Mo. 242–247; McKibbin v. Brown, 1 McCarter (Ch.), 13; Nichols v. Williams, 22 N. J. Eq. 63; Tiernan v. Gibney, 24 Wis. 190; Riley v. Farnsworth, 116 Mass. 223; Colson v. Thompson, 2 Wheat. 336; Blanchard v. D. L. & L. M. Ry. Co., 31 Mich. 43; Fitzpatrick v. Beatty, 1 Gil. 454; Bowman v. Cunningham, 78 Ill. 51; Brix v. Ott, 101 Ill. 70; Gosse v. Jones, 73 Ill. 508; Woods v. Evans, 113 Ill. 186; Wollensak v. Briggs, 20 Brad. 56; same v. same, 119 Ill. 465; Story, Eq. Juris., Secs. 741.

There is a want of mutuality of remedy in this contract; also there are particular parts thereof which can not be specifically enforced in a court of equity. In either case a court of equity will refuse to specifically enforce any part thereof. 3 Pomeroy Eq. Jur., Sec. 1405; Gervais v. Edwards, 3 Dru. & War. (Sugden's Decisions) 80; Stocker v. Wedderburn, 3 Kay & J. 393; Pickering v. Bishop of Ely, 2 Younge & Coll. Ch. 249; Johnson v. Shrewsbury & Birmingham Ry. Co., 3 De G., M. & G. 914; Hills v. Crolls, 2 Phill. Ch. 59; Ogden v. Fossick, 4 De G. F. & J. 421; Lawrenson v. Butler, 1 Sch. & Lef. 13; Benedict v. Lynch, 1 John. Ch. 369; Marble Co. v. Ripley, 10 Wall. 339–358.

Mr. Presiding Justice Shepard delivered the opinion of the Court.

This was a bill in equity to enforce the specific performance of a contract for a lease for a term of ninety-nine years, of certain real estate in the city of Chicago.

The premises were very valuable, the rental provided for being $15,000 a year for the first twenty years, and $16,000 a year for the residue of the term, and the payment of all taxes and assessments, ordinary and extraordinary. The contract contemplated the erection of a permanent building upon the premises within a period of seven months from the first of the November following, at a cost of not less than $300,000, as an additional security for the rent; and, to

secure the erection of such a building, it was provided that "a good and satisfactory bond" should be given to the owners of the lot.

The option for the contract of lease was dated August 25, 1891, and was as follows:

"To whom it may concern: This is to certify that Mrs. Agnes Benton Barnes has paid the sum of one thousand dollars, consideration for the option to take a lease on the lot, 80x160, situated on the south side of Jackson street, between Michigan and Wabash avenues, in the city of Chicago, Illinois, and known as the First Regiment Armory lot; said lease to be for a period of ninety-nine years from the 1st day of November, 1891; said lease to provide for the payment of all taxes, special assessments, or any and all other charges of whatever kind, ordinary or extraordinary, which may be imposed on the said property by city, county or State during the life of the lease, and for the erection within a period of seven months from the 1st day of November, 1891, of a stone, brick and iron building of absolutely fire-proof construction, at a cost of not less than $300,000, in accordance with plans and specifications drawn by Flanders & Zimmerman, or other competent architects, and for which construction within the time specified a good and satisfactory bond shall be given by the said Agnes Benton Barnes, or her assigns, to the owners of said lot. Said lease shall also provide for a yearly rental to be paid during the said term of ninety-nine years, said rental to be at the rate of $15,000 annually for the first twenty years of said term, and of $16,000 annually thereafter during the balance of said term of ninety-nine years, said annual rental to be paid in equal monthly installments on the first day of each month in gold coin of the United States of the present standard of fineness, or the equivalent thereof. The lessee shall procure, pay for and deliver unto the lessors policies of insurance in good and satisfactory companies against loss or damage by fire to the said building, and any loss or damage by fire shall be paid to the lessors and held by them as security for rebuilding or repairing the building.

It is agreed and understood that the lease herein referred

to shall be amplified and extended to the satisfaction of the lessors, and shall contain such other covenants, clauses, conditions and agreements, usual and customary in the making of leases of like situate property, for the term of ninety-nine years, to the satisfaction of the lessors, and furthermore, that upon the delivery of said lease, the lessee shall pay over to the lessors the sum of five thousand dollars, as earnest money, which said sum shall be credited on the account of rent due the first year under the said lease.

This option shall hold good until and including the 1st day of November, 1891, and in the event of the said Agnes Benton Barnes not having availed herself of this privilege for a lease at the said last mentioned date, then this option shall be null and void, and shall be delivered up to be canceled, and the aforesaid sum of one thousand dollars shall be forfeited to the owners of the said property.

This option and privilege is given upon the express agreement and understanding that under no circumstances shall it be filed for record anywhere, and that a recording of the same shall constitute and work an immediate forfeiture and cancellation hereof.

Witness our hands and seals this 25th day of August, 1891.

CHARLOTTE J. LUDINGTON,    [SEAL.]
MARY L. BARNES,            [SEAL.]
  By CHAS. J. BARNES,      [SEAL.]
Attorney in Fact."

" I hereby accept the terms of the above option, and agree not to file the same for record; and I further agree to surrender and deliver up the same for cancellation on the 2d day of November, A. D. 1891, unless a lease on it prior to that date is accepted and executed in accordance with the terms in this option contained.

AGNES BENTON BARNES.

August 25, 1891."

It is agreed that only $500 was paid, instead of $1,000 as recited.

Two extensions of the option were granted by the owners, the first one for three weeks from November 1, 1891, and the second until December 31, 1891.

Very soon after the option was first given, the attention of the parties was drawn to the fact that the amount of the bond to be given was not mentioned in the contract, and Mr. Charles J. Barnes, who acted for the defendants in error, in conjunction with Colonel Jackson, their attorney, informed the plaintiff in error and her agents, that a bond of $150,000 would be required. Repeated attempts were subsequently made in the interest of plaintiff in error to induce defendants in error to fix a less amount of bond, but without success. We think the option contemplated that the defendants in error should have the right to decide within reasonable limits, what the amount of the bond should be.

Under the doctrine laid down in Henderson v. Connelly, 123 Ill. 98, and in Paulsen v. Manske, 126 Ill. 72, it is uncertain to what extent the fee of land might be subject to mechanics' liens, where a lease is made providing for the erection of a building upon the premises.

The object in requiring the erection of such a building as the option contemplated, was security for the payment of the stipulated rent.

It would not be unreasonable that a bond to secure the erection of a building in such a case, should be such as would secure, not only the construction of the building, but that no liens should remain on the building, or the land, whereby the value of the security should be impaired.

Generally, a bond to secure the performance of something costing money, is with a penalty beyond the cost of the act to be performed.

In view of the fact that a building to cost not less than $300,000 was to be constructed upon the premises, and of the possibility of liens in favor of mechanics and materialmen, and the possible necessity, by the owners of the land, to complete a structure upon it which they might not wish, or be prepared to engage in, a bond of $150,000 was not unreasonable for them to require.

The bond that was tendered was for $100,000, and was rejected on the ground that it was not a good and satisfactory one.

That it was not satisfactory in amount, the plaintiff in error already knew; and when, as soon as it was presented, it was objected to on the additional ground that it was not good, the duty of showing it was good rested upon the plaintiff in error, if she wished to avail herself of the advantage of its tender.   The evidence shows that the plaintiff in error was not possessed of any considerable pecuniary means of her own; and the extent of information furnished to the defendants in error as to the financial responsibility of Mr. Leavitt, who signed the bond as surety, or of his sufficiency as surety on such a bond, consisted of a statement made by the attorney of the plaintiff in error to the attorney of defendants in error at the time the bond was tendered, that Mr. Leavitt lived in New York, and that he had been informed that Leavitt owned property in New York and Denver.

Manifestly such a showing amounted to very little.

But it is contended that no surety was required; that by the terms of the option contract, the giving of an individual bond by the plaintiff in error was all that was demanded. The circumstances surrounding the making of the contract, and the purpose to be effected by the giving of a bond, forbid any such construction.   It would have been an idle thing to give a bond with no surety to secure the performance by the same party of a covenant in the lease, to build.   The covenant to build would have been just as good security to the owners of the property as the individual bond of the covenantor.   Under such circumstances when a bond is required to be given, it is meant that a bond with surety shall be given, and when a " good " bond is agreed to be given, it is meant that the surety shall be good.

The object in requiring a bond was security, and that means something more than an agreement by the same person to pay or perform what he or she had already agreed to pay or perform.   The heaping up of one agreement on top of another to do the same thing adds no force or security to the original undertaking.

The circumstances and purposes of the parties will be

looked at to determine what was contemplated by them. Harris v. Miller, 6 Sawyer (U. S. C. C.) 319.

So that, if the tender of a bond was necessary before the lease was executed and ready for delivery, we entertain no doubt that the bond tendered was not such an one as the defendants in error were bound to accept.

We will not decide, or discuss the question, whether the delivery or tender of the bond contemplated by the parties, was a precedent act to be performed by plaintiff in error, or was one to be done concurrently with and dependent upon the offer of a lease, for the reason that, in our opinion, the decree dismissing the bill must be affirmed upon other and plainer grounds.

The plaintiff in error is asking for the specific performance of a contract. To enable a court to enforce the specific performance of a contract, the contract must be certain in all its material provisions. The court can not make a contract for the parties; that must be done by the parties themselves; and if they have failed to do so in material respects the court can not supply for them what they have left unprovided for.

Here was a contract that the lease provided for should be "amplified and extended to the satisfaction of the lessors, and shall contain such other covenants, clauses, conditions and agreements, usual and customary in the making of leases of like situate property, for the term of ninety-nine years, to the satisfaction of the lessors."

The bill says nothing as to what are usual and customary covenants in leases for ninety-nine years, or that in fact there are any such usual and customary covenants. Shall the court say that there are such customary covenants as that parties by bare reference may be supposed to have contracted with reference to them? If so, what are they? The bill gives no information upon the subject, and this court does not know what they are.

Shall there be a right of re-entry reserved? If so, after how long a default? If the taxes and assessments are not paid by the lessee, may the lessors pay them and add the amount to the next, or any other, installment of rent? If

Barnes v. Ludington.

so, shall the tax and assessment warrants be conclusive as to the legality of the taxes and assessments, or must the lessors prove the proceedings as in the case of ejectment on a tax title? At the end of the term what shall be done with the building? Shall the lessors pay the value of it, or a percentage, and what percentage of its value, and, if either, how shall such value be ascertained? It has already been seen that the plaintiff in error did not accede to the giving of a bond in the sum required by defendants in error. How can the court make her give a bond, such as was required of her?

Many other questions might be put, but these are enough to show that the point is well made, that the court can not make a contract for the parties, but can only enforce one they themselves have made.

Again, the contract provides for the construction of a building to cost not less than $300,000, according to plans and specifications to be drawn by architects.

On the one hand, the lessors are entitled to have a building erected at a cost of not less than $300,000, and on the other, the lessee is not bound to erect one at any greater cost. Common experience teaches that it would be impossible for a court to settle upon plans, to be prepared, the cost of execution of which should exactly equal the sum named, and it would be beyond its power to force the lessors to accept a less costly structure, or to require the lessee to build one at greater expense.

"An agreement for building a house of a certain value, is not one which this court will direct to be specifically performed." Brace v. Wehnert, 25 Beavan, 348. That was a case where the contract provided for the erection of buildings " of the value of £1,400 at the least.

Numerous other questions and difficulties present themselves in connection with the contract in question, but we think we have shown that so much that is material still rests in treaty between the parties, as to render the contract incapable of being specifically enforced in equity.

The decree of the Circuit Court, dismissing the bill, will therefore be affirmed.