Kinkead, J.
This cause was submitted upon a general demurrer to the petition. A very extended and careful consideration was given it before the decision which was made on October 14th, when the demurrer was sustained and an opinion written, stating reasons for and grounds of the decision-. Since then the matter has been reargued upon briefs, and the ease has been reconsidered and given more than ordinary attention. The result has been that the case can be more easily determined and placed upon much simpler grounds than in the previous opinion.
The action is brought by the plaintiff corporation as the assignee for an alleged valuable consideration of a certain contract set forth in the petition, which is as follows:
‘ ‘ September 22, 1909.
“I hereby lease to David T. Keating, his heirs and assigns, my property at the southwest corner of Main and Sixth streets, Columbus, Ohio, 125 feet on Main street, west to the first alley, and 120 feet south to the ten foot alley for one thousand dollars ($1,000.00) per year for five years; one thousand two hundred and fifty dollars ($1,250.00) per year for five years; one thousand seven hundred dollars ($1,700.00) per year thereafter, perpetually, payable quarterly, with privilege of purchase of said premises for twenty-five thousand dollars ($25,000.00) within two years, and for thirty thousand dollars ($30,000.00) within seven years.
“J B. 'Zimmer.
“Accepted if title good,
“David T. Keating.”
The petition alleges, among other things, that Keating investigated the title to the premises, and upon finding same to be good, formally notified Zimmer of the unconditional acceptance of the contract of lease. It is important to note also that the petition avers that thereafter defendant Zimmer prepared a formal indenture of lease for the premises, incorporating therein a requirement that the lessee should erect a three or four story *457 building on the premises within one year; that Keating advised “Zimmer that he would consent to such a provision, the building, however, to be erected in five years.” It is then averred that Keating repeatedly communicated his readiness to perform and carry out his part of said contract of lease and he finally made formal demand upon Zimmer to comply with said contract without any modification.
The prayer is that defendant be required to carry out “said contract of lease” and that he be ordered to lease and convey said premises to plaintiff by executing and delivering to it a good and sufficient indenture of lease according to the terms and conditions of lease.
The question presented by the pleading is whether or not the contract which is sought to be enforced is of the nature and character which a court of equity will specifically enforce. While there has been some evident confusion respecting this subject, the rule is that in eases of appeals to courts of equity to enforce specific performance of written contracts where land or any estate therein is the subject-matter of the agreement, the inadequacy of the legal remedy is well settled, and the equity jurisdiction is firmly established and is regarded as exclusive. Pomeroy’s Equity Jurisprudence, Section 1402, and numerous eases.
And the general expression of the rule is that a court of equity will, as a matter of course, grant specific performance of such contracts if they are valid at law, fairly entered into, and upon a sufficient consideration, and unobjectionable in any of its features. Hall v. Warren, 9 Wis., 908; Fowler v. Fowler, 204 Ill., 82; Marshall v. Keets, 227 Ill., 35 (118 Am. St., 247) ; W. Va., etc., L. Co. v. Vinal, 14 W. Va., 637.
Some courts have expressed the view, however, that the remedy is within the discretion of the court rather than as a matter of course. 80 Am. St., 438; Chalot v. Winter Park Co., 34 Fla., 258 (43 Am. St., 192).
But the rule properly stated is that a court will as a matter of course grant the specific performance when all the essential elements are present and will exercise a sound judicial discretion which must, of course, always be done with due regard to the peculiar facts and equitable considerations of.each case, guided *458 and regulated, as far as may be, in the exercise of that discretion by precedent and established practice. Stiffin v. Shawan, 43 O. S., 178.
The nature or legal character of a contract which is sought to be enforced must always be first considered and determined.
On the first hearing and in the decision rendered sustaining the demurrer previously made, I. was inclined to the view that the instrument in question was a mere option, extended to Keating until he should have an opportunity to examine the title to the the property and to communicate his final acceptance of it to Zimmer. That inference may be justly drawn from the conditional acceptance made by Keating. I was of the opinion that notwithstanding the" contract contained words of present demise, still its effect could be no more than a mere offer because of the conditional acceptance. This theory of the contract finds strong support in Crandall v. Willig, 166 Ill., 233, where a formal contract containing much more fully the terms and conditions than the one here was made between husband and wife on the one part as vendors and Willig as the proposed purchaser, and was signed by all three. The court treated it as an option. Barnes v. Ludington, 51 Ill. App., 90, is another case of similar import.
In the former decision and opinion the law governing the enforcibility of options of real estate was discussed. Such options when the essential elements are present, whether they are for the fee or the leasehold, will be specifically enforced upon an acceptance of the terms of the contract and tender of the price as readily as any other class of contracts. Ross v. Parks, 93 Ala., 158 (30 Am. St. Rep., 47), and an excellent discussion in a note in 118 Am. St., 592.
One of the reasons stated in the previous opinion why the contract in this case should not be specifically enforced was that I was of the opinion that it was not supported by a valuable or sufficient consideration required by the rules of equity governing this remedy. Cases are uniform in holding that the complainant in such cases must show that the contract was founded on a sufficiently fair consideration. Crandall v. Willig, 166 Ill., 233; Davis v. Petty, 143 Mo., 374; Graybill v. Brough, 89 Va., 895 (37 Am. St., 894); 21 L. R. A., 133; Hawralty v. Warren, 18 N. *459 J. Eq., 124 (90 Am. Dec., 614) ; Jenkins v. Locke, 3 App. Cs. (D. C.), 485; Peacock v. Deweese, 37 Ga., 570.
Equity will never enforce an executory contract unless there is an actual valuable consideration. 3 Pomeroy’s Eq., Section 1293; Graybill v. Brugh, 89 Va., 895 (37 Am. St., 894).
In the case just cited the contract was to convey land where the consideration ■ was simply $1, but nothing in fact was ever paid, and the court- held it to be a mere naked option to buy lands. Crandall v. Willig, 166 Ill., 233, is another illustration where the court did not consider the nominal consideration of $1 as a sufficiently fair consideration within the rules, and holding that equity will inquire into the real consideration of a contract without regard to the amount expressed.
The principle I had in mind furnishing the lack of a sufficient consideration as a reason for the decision was that if this paper was to be considered as an agreement to execute and deliver to Keating an indenture for a permanent leasehold, that the paper itself in order to appeal to a court of equity ought to be based upon an adequate and sufficiently fair consideration. It does not seem that the promise made by Keating to pay the-rent stipulated in the instrument nor the trouble and expense involved in examining the abstract of title was of the character or quality of adequate consideration required by the rules of equity. An examination of all the option contracts which courts of equity have enforced will disclose that there was always a valuable consideration for the option itself as distinguished from the future contract of conveyance to be made. See 118 Am. St., 592, 597, note.
I am of the opinion now, however, that the questions involved may be readily determined without regard to the question of consideration by considering the nature of the instrument set forth in the petition. Courts have been frequently called upon to determine whether an agreement such as the one in question is to be regarded as a present lease or merely an agreement to make one. The distinction is very important. Concerning this point, it is stated in one authority:
‘' In determining whether an instrument is a present demise or merely.an agreement to lease, the controlling consideration is the intention of the parties to be gathered from the whole instru *460 ment. Strong circumstances of inconvenience apparent on the face of the instrument if it should be construed as a lease, indicate the intention of the parties that it should be an agreement to lease only.” 18 Am. & Eng. Encyc., 599.
Where the instrument does not contain words of present demise, but its effect is to provide for a future lease, its nature as a contract for a lease is easily determined. On the other hand, where present words of present demise are used, it will be construed as a lease.
Looking at the face of the contract described in the petition, it will be noticed that it contains present words of demise, “I hereby lease to David T. Keating, his heirs and assigns, my property, ’ ’ etc. If it is to be regarded as an attempt to make a lease, of course it is null and void under the statute of frauds, because it is not executed in conformity thereto. The fact that the circumstances surrounding this case make it apparent that the parties intended, though they did not specifically so provide,to enter into a contract for the making of a future lease; the fact that the plaintiff, after setting forth a copy of the contract, avers that Zimmer afterwards prepared a form of lease which contained additional provisions, shows conclusively that it was the intention of the parties to execute a future lease, and the pleading also shows that the parties had not agreed upon all of -the terms and conditions which were to be incorporated into the proposed lease or indenture. One of the prerequisites of an instrument to warrant its enforcement is, that the contract must be, in its nature and circumstances, unobjectionable in any of its features. The contract in question falls short of this requirement, because it is readily apparent to any one that it does not contain any of the usual and ordinary terms and- conditions which an indenture of the character of a conveyance .of a permanent leasehold usually does and should contain. . There is no agreement whatever as to what use shall be made of this property, whether there is to be built upon it a three or four story building, or- any building; or what shall be done with reference to the payment of taxes, street assessments or other liabilities arising under liquor laws; or what shall be done with reference to insurance and rebuilding in case of fire; nor what shall be the result in the case of non-payment of rent, and the like. Because of the lack of all these essential *461 matters, it would be presumptious for a court of equity to undertake to enforce a contract such as is described in the pleading. Indeed, a court of equity would have to make a contract for the parties, which it can not do. The rule of law is, that though the parties expressly agree to make or take a lease, the contract is not binding if the terms of the lease are left indefinite and undetermined. 18 Am. & Eng. Encyc., 597-8.
Barnes v. Ludington, 51 Mo. App., 90, supports this view taken by the court. In that case a contract had been entered into for a perpetual leasehold and though there were quite a number -of provisions in the agreement, there was still some uncertainty in reference to some material provision. The court held:
“That to enable a court to enforce the specific performance, the contract must be certain in all its material provisions. The court can not make a contract for the parties; that must be done by the parties themselves; and if they have failed to do so in any material respects, the court can not supply for them what they have left unprovided for. ’ ’
See also Lowe v. Pamberton, 10 Misc., 362.
It is also held in Sourwine v. Sourwine, 10 Hun., 432:
‘ ‘ That there was no agreement to give a lease if there was any essential matters affecting the rights of the parties left open for further consideration.”
This principle applies with controlling force to the instrument declared upon in this case and to the facts as they appear in the petition.
One other matter to which the attention of counsel may be directed, is that there has not been mutuality of minds in the contract. The acceptance by Keating, was conditional, which was not agreed to by Zimmer, that is, Zimmer did not agree to give a good title, although it may be true that upon discovering that the title was good and Keating communicating his acceptance of the contract to Zimmer, there being no other objections, would complete the same.
In the previous opinion prepared in this case the question of mutuality of remedy was mentioned. While I think the ease can be decided on other grounds, viz.: the lack of essential requirements in the contract, J have given this question much con *462 sideration. There is a lack of appreciation and interpretation of the rule governing the matter. Many decisions have been rendered where the opinions show a lack of understanding of it. I undertake to state what appears from discussions of competent men upon the subject to be the proper rule applying to this phase of the remedy, in order to demonstrate the injustice of enforcing a contract for an indenture for a perpetual leasehold where the essential terms and conditions have not been fully agreed upon. There have been varied expressions of opinion with reference to whether the mutuality of remedies which is considered as a prerequisite to a specific performance of a contract shall exist at the time of the making of the contract, or as of the time when the remedy is sought. The fundamental principle underlying the rule is that a court will not undertake to do equity in favor of the plaintiff when by the decree rendered in such case, it will be doing an injury to the other party. In other words, the court must do equity to both parties by whatever decree it renders.
Professor John Barr Ames, a legal scholar of the highest ability, with his characteristic penetration and clearness, has, in his discussion of cases, formulated a rule which will be directly stated; his discussion demonstrates the necessity of revising the common form of stating the principle of mutuality and the propriety of adopting a form which he suggests as follows >
“Equity will not compel specific performance by a defendant, if, after performance, the common law remedy of damages would be Ms sole security for the performance of the plaintiff’s side of the contract.” 1 Columbia Law Review, pp. 1 to 12.
The remedy which a defendant may have in the ease of a suit for the specific performance of a contract for the purchase of land is set forth in Freeman v. Paulson, 87 Am. St., 438, Jaggard, J., states that the rule of the mutual remedy, which the vendor has in ease the vendee does not complete the purchase, is to sue in equity for specific performance and divest the vendee of his equitable claim under the contract by a judicial sale, applying the proceeds derived therefrom to the payment of the purchase price or the value of the property. If this is to be the roundabout reasoning in support of the rule, it is no wonder *463 that such an eminent scholar as Professor Langdell should state that “The rule of mutuality of remedy is obscure in principle and in extent artificial, and difficult to understand and to remember.” It is no wonder, too, that many of the modern decisions have piled up so many exceptions to the rule of mutuality that it has become almost useless. There is, however, much merit in the rule, as stated by Professor Ames. If a court of equity is about to enforce the specific performance of a contract, for example, for a perpetual leasehold, it must naturally consider what remedy the defendant would have in case the lessee, who secures the lease by order of the court, should fail to carry out his contract with the lessor. In the latest edition of Pomeroy’s Equity Jurisprudence, at Section 762, it is suggested that a rule which it is thought meets the cases generally is as follows:
‘ ‘ If, at the time of the filing of the bill in equity, the contract being executory on both sides, the defendant himself free from fraud or other personal bar, could not have the remedy of specific performance against the plaintiff, then the contract is so far lacking in mutuality that equity will not compel the defendant to perform but will leave the plaintiff to his remedy at law,” citing, Burdine v. Burdine, 98 Va., 515 (Am. St., 741).
The theory is that of equity is to compel the defendant, say in the case at bar, to execute and deliver the indenture conveying to plaintiff the leasehold for ninety-nine years, the defendant in turn, after having, in compliance with the order of the court, conveyed the leasehold, would be bound to pursue a remedy at law only, then equity will refuse to lend its aid to such an unequal result. 6 Pomeroy’s Equity, Section 769.
If the Minnesota court is right in the remedy which a vendor of real estate has, then he can only have the property sold and the proceeds applied to the payment of the purchase money which the vendee agreed to pay him. This was the conclusion of the court in Freeman v. Paulson, 107 Minn., 64 (131 Am. St., 438), which was based upon the theory that the contract of purchase gave the vendee an equitable title to the land, which could only be disposed of by this remedy, and not by an action at law, the decree in such case cancelling the contract. If a vendee has to pursue such a course, submit to the sale of the property which *464 he promised to sell at a certain price, the legal title of which still remains in himself, and the livelihood of its being sold at a sacrifice and at a less price- than it was contracted to be sold for, there does not seem to be much equity in such a remedy with such probable consequences, and it is not surprising that the rule has not been applied in many cases.
I believe the true rule to be that -which was formulated by Professor Ames, and that the court, for example,. must when it is asked to decree specific performance by the vendee or lessee, consider what remedy the vendor or lessee will have in case the vendee or lessee fails to perform his part of the contract which the court compels the defendant to make.
Suppose the court would undertake' to compel the defendant Zimmer to execute an indenture for a perpetual leasehold? What remedy would he have in case the plaintiff failed to carry out his part of the contract ? The proposition, however, is too unreasonable to pursue further for the reason that the court would have to make a contract for the parties, or it would have to force the parties to make a contract which would be agreed upon subsequent to the decree in order to do equity, and this of course, can not be done. It is common knowledge that all perpetual leaseholds as they' are now executed provide what rights the lessor will have upon a failure of the leassee or his assigns to carry out the contract, and these terms and conditions will suggest the remedy.
If the court would undertake to enforce the specific performance of the contract as it now stands in the petition, the. defendant would have no remedy, excepting a’ legal one, against the plaintiff. The failure of the contract to embrace and provide the terms and conditions which such contracts usually contain and should contain, completely demonstrates that it lacks the usual essentials required of such contracts and renders it impossible for a court of equity to enforce its specific performance.
The judgment of the court is that the demurrer to the petition is sustained, and the action will be dismissed, unless the plaintiff can amend his petition so as to show that he is entitled to some legal relief.