**William G. Wurn, Appellee, v. Joseph M. Berkson et al., Appellants.**

### Gen. No. 26,645.

1. SPECIFIC PERFORMANCE—*contract must be unambiguous.* Specific performance can be decreed only when the terms of the contract in question are clear, certain and free from ambiguity.

2. SPECIFIC PERFORMANCE—*necessity that contract be complete.* If a contract does not embrace all of the terms and conditions intended to be covered by it and some are left for future agreement, specific performance cannot be awarded.

3. SPECIFIC PERFORMANCE—*of contract contemplating a future contract fixing details.* An agreement for the erection of a garage upon certain lots to be rented to complainant when completed, which contemplated a future written contract in which provisions should be made as to other details as to which no definite agreement had been reached, was not a sufficient basis for a decree of specific performance.

4. SPECIFIC PERFORMANCE—*effect of failure of contract to show that some defendants were bound thereby.* The fact that an agreement as to which specific performance is sought contains nothing indicating that four of the defendants are in any way bound by its terms would be sufficient to defeat specific performance.

5. SPECIFIC PERFORMANCE—*effect of a subsequent contract.* Where an agreement to erect a building and lease it to complainant was

not sufficient as a basis for a decree for specific performance, the fact that, later, negotiations were entered into and a form of lease agreed upon in which plaintiff and his wife, who was not one of the original parties, were the lessees and all of the defendants were lessors, four of whom were not parties to the original agreement, does not afford a sufficient reason for decreeing specific performance of the original agreement.

6.    LANDLORD AND TENANT—*effect of deposit by, lessee to show good faith in addition to advance payment of rent.* An agreement for a lease in which it was provided that the plaintiff was to deposit $1,000 to be applied as rental on the first part of the lease term and also that plaintiff should deposit $500 as earnest money to show good faith and as further consideration, which was to be applied as rental, *held* not to mean that the $500 was to constitute a part of the $1,000 deposit.

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed and remanded with directions. Opinion filed November 29, 1921. Rehearing denied December 9, 1921.

RABER, KOSTNER, ANDALMAN & AVERY, for appellants; EDWIN J. RABER, MAXWELL N. ANDALMAN and MAX C. LISS, of counsel.

SAMUEL G. GRODSON, for appellee; MORRIS K. LEVINSON, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is an appeal from a decree of the superior court of Cook county awarding specific performance of a certain agreement between appellee and one of the appellants and directing the appellants, who were defendants in the superior court, to execute and deliver to appellee a lease in conformity with said agreement. The agreement of which the court has decreed specific performance was made between Morris H. Berkson, one of the defendants, party of the first part, and the complainant as party of the second part. It was signed by said Morris H. Berkson, by Isador Berkson, and

also by the complainant and by Anna J. Wurn, his wife. The agreement bears date September 16, 1915, and is as follows:

"First. Party of the first part agrees to construct a garage on property located on Halsted street, known as 6617, 6619, 6621 So. Halsted street, 75 ft. frontage on Halsted street by 125 ft. depth to an alley; garage to be constructed in accordance with the present City of Chicago building ordinances, and to cover the whole of the lot; also to install in said garage a gas tank with 1,000 gallon capacity and also oil tank with 100 gallon capacity, and also heating apparatus to meet requirements and suitable for such building; and also to install necessary wiring and fixtures; also to erect office in said garage.

"Second. Party of the first part agrees to lease said above described garage to party of the second part on the following rental for a term of five years: $175.00 per month during first twelve (12) months, commencing as soon as building is ready for occupancy; $200.00 per month for the next three years, and $225.00 during the balance of 12 months. Also party of the first part agrees to give option to the party of the second part option of renewal of said lease of said garage for a period of five years at a rental of $250.00 per month, and said lease to commence upon the termination of the said first five year lease on the above described garage.

"Third. Said second party agrees to rent from said first party the said garage as above described and on the leasing conditions as heretofore described. Said party of the second part agrees to deposit $1,000.00 with the party of the first part to be applied as rental on the first part of this lease term. Said party of the second part does hereby deposit $500.00 as earnest money to apply as good faith and further consideration of this transaction, and when said second party commences occupation of garage, said earnest money is to apply as rental."

The bill alleges, in substance, that on September 16, 1915, the five persons named as defendants were the owners of certain real estate in the City of Chicago,

the legal description of which it is unnecessary to repeat but which the agreement purported to designate by street numbers, and that the title thereto was held by the defendant Morris H. Berkson in trust for himself and the other defendants. It then alleges the execution of the agreement above set forth; that the premises therein described were vacant; that through the mutual mistake of the complainant and the defendants, said premises were erroneously designated as numbers 6617, 6619 and 6621 South Halsted street, the correct numbers of the property involved being 6613, 6615 and 6617 South Halsted street; that on October 30, 1915, the defendant Morris H. Berkson conveyed the said real estate to a third party, who on the same date conveyed the said premises to the five defendants; and that these conveyances were made without consideration and for the sole purpose of vesting the title in the defendants, who were the actual owners of the premises. The bill further alleges that all of the defendants were fully informed regarding the agreement of September 16, 1915, and ratified the same and specifically agreed with the complainant to fulfill the provisions thereof; that thereafter the garage in question was constructed and made ready for occupancy on March 17, 1916. The bill sets forth certain negotiations between the parties to the agreement as to the terms of the proposed lease which were finally embodied in a written lease dated March 17, 1916, signed by the parties, but that the defendants refused to deliver the lease to the complainant for the alleged reason that complainant had failed to deposit with the said Morris H. Berkson the sum of $1,000 as required by paragraph 3 of the agreement, the complainant alleging that he made a deposit of $500 as earnest money and tendered another $500 to the defendants in fulfillment of this paragraph of the agreement. The prayer of the bill is that the agreement of September 16, 1915, be reformed so as to describe the premises

by the correct street numbers and that the agreement
of September 16, 1915, be enforced and the defendants
decreed to execute a lease in conformity with the pro-
visions thereof. The answer of the defendants denies
in detail all the material allegations of the bill above
indicated, including those relating to the ownership
of the property in question. The contract of Septem-
ber 16, 1915, having been filed for record, the defend-
ants filed their cross-bills praying that said contract
be canceled as a cloud upon their title.

The evidence shows that after the execution of the
agreement of September 16, 1915, there were extended
negotiations between the parties as to the form of a
lease which would satisfy both of them and that as a
result of these negotiations a lease was finally agreed
upon, which bears date March 17, 1916. This lease
was signed by the parties and by Anna G. Wurn, wife
of complainant, as one of the lessees, but was never
delivered for the reason that the lessors demanded
the deposit with them of the sum of $1,000, claiming
that the third paragraph of the agreement required
such deposit, in addition to the deposit of $500 as
earnest money which the complainant had deposited
with the agent who negotiated the transaction at the
time the agreement of September 16, 1915, was exe-
cuted. Complainant contends that the earnest money
should be considered as a part of the $1,000 which
he was required to deposit with the lessor. The earn-
est money in question was in the form of a check pay-
able to the real estate agent, one Engelstein, who has
ever since retained the check or its proceeds. It does
not appear that either party ever made any demand
on Engelstein for this particular $500.

The decree of the superior court finds that the com-
plainant is entitled to a specific performance of the
agreement of September 16, 1915, and that the pro-
posed lease of March 17, 1916, is in conformity with
the agreement of September 16, 1915, and should be

delivered to the complainant and so orders; also that the $500 which the complainant deposited with Engelstein, the broker, should be regarded as a part of the $1,000 which the complainant was obligated by the third paragraph of the contract to pay to Morris H. Berkson.

It is now contended by appellants that the superior court was not justified in entering this decree for the reason that the contract of September 16, 1915, is so uncertain, vague and ambiguous as to render it incapable of being specifically performed. Among other features of the agreement which are alleged to be vague and uncertain, attention is called to the lack of specifications of the building; the uncertainty as to the amount of rent, reference being had to the provision for the payment of $225 during the last 2 years of the term, without specifically stating that this is a monthly rental, the covenants and terms of the proposed lease; the error in description of the premises and the dubious meaning of the third paragraph of the agreement as to the deposit of cash by the lessees; the necessity of further negotiations between the parties before a final agreement could be said to have been reached; that none of the defendants, except possibly Morris H. Berkson, can be bound by the agreement of September 16, 1915, as none of them executed that agreement and did not authorize its execution in their behalf; that it therefore becomes necessary for the court to establish a trust by finding that Morris H. Berkson held title to the property in question in trust for himself and the other defendants; that the decree of the superior court does not specifically establish such a trust, and is based upon facts shown in the evidence, which are not embodied in the agreement.

The evidence shows that the defendants erected a building of the general character described in the agreement and that as a result of further negotiations

a form of lease was agreed upon satisfactory to both of the parties, so that the only feature of the affair which prevents the complainant from becoming the lessee of the premises in question is the dispute between the parties as to whether or not complainant is obligated to make a further deposit of $500 as a condition precedent to the delivery to him of the lease in question.

It is obvious that the agreement of September 16, 1915, taken by itself, is not a sufficient basis for a decree of specific performance. The parties contemplated a future written contract, in which provisions should be made as to other details, regarding which no definite agreement had been reached on September 16, 1915. A positive intention is apparent that the bargain between them should be ineffectual pending the accomplishment of further acts. The provisions of the agreement must be aided, explained and amplified in numerous particulars in order to make its terms certain and definite. Specific performance can be decreed only when the terms of the contract in question are clear, certain and free from ambiguity. If the contract does not embrace all of the terms and conditions intended to be covered by it and some are left for future agreement, then specific performance cannot be awarded. *Folsom v. Harr,* 218 Ill. 369, and cases cited; *Barnes v. Ludington,* 51 Ill. App. 90. It is plain that the agreement contains nothing indicating that four of the defendants are in any way bound by its terms. This feature alone would be sufficient to defeat a specific performance. *Cowan v. Curran,* 216 Ill. 615. Parol testimony becomes necessary in order to correct the misdescription of the premises in question, although the misdescription taken by itself would not be vital. *Cumberledge v. Brooks,* 235 Ill. 249. The transaction whereby Morris H. Berkson conveyed the premises to a third party, who in turn conveyed to the appellants, all without consideration, as found by the decree, does

not necessarily indicate that the said Morris H. Berkson held title on September 16, 1915, as a trustee for himself and the other defendants, but may indicate a contrary state of affairs. No evidence was furnished as to the actual ownership of the property other than the conveyances above mentioned.

The mere fact that the parties to this case afterwards entered into negotiations and agreed upon a form of lease in which the complainant and his wife, who was not one of the original contracting parties, were the lessees and all of the defendants, four of whom were not parties to the agreement of September 16, 1915, were the lessors, does not in our judgment afford a sufficient reason for decreeing a specific performance of the agreement of September 16, 1915. The bill prays for a specific performance of that agreement and not of the subsequent agreement embodied in the proposed lease of March 17, 1916, which had been prepared as a result of negotiations and agreements between the parties thereto, all of which took place subsequent to the date of the original agreement. For these reasons we are of the opinion that the decree of specific performance was unwarranted. *Threlkeld v. Inglett,* 289 Ill. 90; *Hamilton v. Harvey,* 121 Ill. 469.

It is true that the proposed lease of March 17, 1916, contains a recital to the effect that it is made in compliance with the terms of the agreement of September 16, 1915, which the trial court may have regarded as a ratification of the agreement by all of the parties to the suit, but which seems to us to afford a further illustration of the uncertainty of the original agreement. The use of these words in the proposed lease may have been for the sole purpose of protecting Morris H. Berkson from any liability under the agreement of September 16, 1915.

In addition to the considerations above stated, some weight must be attached to the uncertainty of paragraph 3 of the agreement, by which the complainant

agreed to "deposit $1,000 with the party of the first part to be applied as rental on the first part of this lease term." The paragraph further sets forth that the lessee "does hereby deposit $500 as earnest money to apply as good faith and further consideration of this transaction," and the agreement that this $500 shall be applied as rental, whenever the lessee commences occupation of the garage in question. We cannot agree with the conclusion of the trial court that the deposit of $500 as earnest money with the broker Engelstein must be applied on the deposit of $1,000 above mentioned to be paid to the lessor. The language is clear and explicit that the lessee is to deposit $1,000 with the lessor to be applied as rental, and it cannot be assumed that the payment of $500 as earnest money to the real estate broker must be regarded as a part of that $1,000. In other words, if we concede the power of the court to award specific performance as was done by the decree in question, it is apparent that the decree ought not to become operative until the complainant has fully complied with the terms of the contract which is sought to be specifically enforced.

For the reasons above indicated the decree of the superior court will be reversed and the case remanded with directions to enter a decree dismissing the bill of complaint for want of equity and granting relief as prayed in the cross-bill of the defendants.

*Reversed and remanded with directions.*

GRIDLEY, P. J., and BARNES, J., concur.