EDWARD E. PETERSON, APPELLANT, V. WEBB HULTZ ET AL.,
APPELLEES.

FILED JUNE 23, 1914. No. 17,762.

**Vendor and Purchaser:** CONTRACT: SUIT TO RESCIND: BURDEN OF PROOF.
After the execution of a deed to a tract of land and part payment
of the purchase money in pursuance of a contract of sale, an alleged
defect in the title was discovered. The grantor and grantee then
agreed that a suit should be brought at the grantor's expense to
quiet the title against such alleged defect. The parties then esti-
mated the time that would be necessary to procure a decree and to com-
plete an abstract of title, and entered into another contract provid-
ing that, upon failure to furnish a good and sufficient abstract by
October 29, 1910, the grantor would return all money paid and cancel
all notes given by the grantee. The grantee took possession under
his deed. Decree was rendered on October 29. The grantee on that
day demanded the return of the money and notes, and soon afterwards
brought this action to rescind and to recover the purchase price.
*Held*, That, under the facts stated, time was not of the essence of
the contract, and that the burden was upon plaintiff to show that the
abstract did not set forth a marketable title.

APPEAL from the district court for Keith county:
HANSON M. GRIMES, JUDGE. *Affirmed.*

*J. G. Beeler,* for appellant.

*Muldoon & Gibbs* and *Wilcox & Halligan, contra.*

LETTON, J.

This is an action to rescind an executed contract for
the purchase of certain land and to recover the purchase
money. The district court dismissed the action, and plain-
tiff appeals.

The petition alleges that on the 29th day of March, 1910,
the defendant Hultz and plaintiff entered into a written
contract whereby Hultz agreed to convey by a good and
sufficient warranty deed clear of all incumbrance, a tract
of land in Keith county for the sum of $3,200, $500 in cash,
$500 within ten days, and the balance in two annual pay-
ments of $1,100 each; that Hultz further agreed to fur-

nish a good and sufficient abstract of title; that convey-- ances were executed by defendants to plaintiff on March 30, 1910, and filed for record by Hultz in the office of the county clerk of Keith county; that on the 11th of April plaintiff executed and delivered to Hultz his two notes for $1,100 each, having paid the $1,000 specified in cash, and executed a mortgage on the land to secure the notes; that on April 7 plaintiff discovered that the abstract showed a defective title to a portion of the premises, and that he refused to further carry out the agreement, and a new agreement was entered into that day between plaintiff and defendants; that by this contract defendants agreed to convey the land to plaintiff; that they would furnish a good and sufficient abstract of title on or before the 29th day of October, 1910; and that upon failure to do so they would return all money paid and would cancel all notes of plaintiff. It is also alleged that plaintiff paid the money and executed the notes and mortgage under the conditions of the latter contract only, and that defendants failed to furnish the abstract or to make and deliver a good title. Plaintiff then pleads that he demanded the return of the money and notes, and offered to return the premises to defendants. The prayer is for judgment for $3,200, with interest.

The answers, in substance, admit the making of the contracts, and the payment of the money and delivery of the notes; plead that a perfect and marketable title was conveyed to plaintiff. As to the contract dated April 7, it is alleged that after the deeds were delivered plaintiff and his attorney, H. A. Dano, stated a cloud upon the title was caused by the recording of a deed to one Radcliffe, and that, while defendants maintained there was no defect in the title, to accommodate and satisfy plaintiff, defendants agreed to pay the expense of bringing an action to quiet the title, plaintiff having stated he would be entirely satisfied if such suit was brought; that the second contract was executed without consideration in order to allow time to prosecute this suit to a final judgment; that action was brought and the title quieted, as agreed upon;

that a conveyance of the interest of the heirs of Radcliffe
was also made to plaintiff, and that he has a good and
perfect title; that the delay in quieting the title was caused
by the plaintiff and his attorney, Dano, and that time was
not of the essence of the contract; that the date October
29 was fixed in the second contract as allowing sufficient
time for the next term of the district court for Keith county
to be held and the decree procured, and was put in the
contract upon the express representations of Dano; that on
the 29th of October a decree was rendered in the action,
and the abstract soon afterwards extended, and that plain-
tiff has a perfect and indefeasible title to the premises.

The district court made extensive findings, and, after
stating the facts as to the execution of the contract of
March 29, 1910, and the recording of the deeds on March 30,
says: "On April 7, the defendant Hultz went to plaintiff
Peterson's house to have their deal closed up, and together
they went to the office of H. A. Dano, attorney. The de-
fendant Searle was there, or came in soon after the arrival
of Peterson and Hultz. The abstract of title was at Dano's
office. By whom the abstract of title was obtained and
taken to Dano's office the evidence fails to show. On ex-
amination of the abstract by all parties, Mr. Dano pointed
out on the abstract the entry showing a conveyance on
September 26, 1904, by quitclaim deed to F. P. Radcliffe,
of the W. $\frac{1}{2}$ of SE. $\frac{1}{4}$ of section 22, town 14 north, of
range 39 west, recorded March 10, 1905, and stated that the
same was a cloud upon the title, but that it could be easily
removed by an action to quiet title. Some talk was then
had as to when the next term of court would be held, and
it was agreed that the next term was fixed for October
24, 1910. Mr. Dano was then asked if he would take the
case and procure judgment at that term, on or before
October 29, 1910, and Mr. Dano replying that it could be
done, and that he would do so, the defendant Searle author-
ized Mr. Dano to proceed with the case and procure judg-
ment, quieting title against said deed, agreeing to pay Mr.
Dano for his services, and also to pay for the costs of

such action, which payments the defendant Searle has
made.

"On the discovery of this defect, the plaintiff Peterson
declined completing the deal between himself and defend-
ant Hultz until the defect complained of was removed, or
he had something showing that the defendant Hultz would
clear the title of the defect complained of. Thereupon a
new agreement for warranty deed was made.

"On the signing of said last contract, the plaintiff exe-
cuted and delivered the two notes of $1,100 each, and the
mortgage provided to be given by the first contract, and
paid the $500 cash agreed to be paid. Plaintiff then took
and went into possession of the lands. During the month
of June, 1910, plaintiff paid to the county clerk the fees
for recording of the two deeds conveying the land to him.
Mr. Dano, as attorney for the defendant Searle, obtained
a decree quieting title against the said quitclaim deed of
Beardsley to Radcliffe in the district court for Keith
county, Nebraska, on October 29, 1910. The abstract of
title was not extended showing the title cleared of such de-
fect, nor was there any abstract of any character furnished
plaintiff on or before October 29, 1910, nor since that date,
until during the progress of the trial of this cause, when de-
fendant tendered abstract. Defendants' exhibit B.

"On October 29, 1910, plaintiff wrote a letter to the de-
fendant Hultz, saying: 'As you have failed to deliver ab-
stract of title of the S. ½ of the NE. ¼ and the NE. ¼
of the SE. ¼ of section 22, town. 14, range 39, I demand
that you return all money paid by me to you on said land,
and that you return notes at once.

"On January 3, 1911, the plaintiff began this action."

During the trial the plaintiff tendered a quitclaim deed
conveying the land to defendant Hultz.

Plaintiff maintains that time was of the essence of the
contract, and that upon the failure to furnish the abstract
upon October 29, 1910, he was immediately entitled to the
return of the purchase price. He further contends that
the abstract tendered does not even now show a perfect
title, and that he is entitled to rescind for that reason.

We are unable to take the view that time is of the essence of this contract. It is true that time may be the essence of a contract even without the use of an express stipulation to that effect. *White v. Atlas Lumber Co.*, 49 Neb. 82. "Ordinarily, therefore, the question is one of intention, to be ascertained from the construction of the contract as a whole and with reference to the circumstances surrounding the transaction; and in construing the contract due consideration is also to be given to the subsequent conduct of the parties tending to show how they themselves understood it." 39 Cyc. 1339. But the converse is also true, and where, considering all the facts and circumstances surrounding the execution of the contract, and the intention of the parties, it does not seem right, just, or equitable that the contract should be construed with such strictness, and it appears that the party seeking to enforce it according to its strict letter will receive no damage by reason of the failure to comply upon the day named, the courts will not ordinarily hold that time is essential.

The contract was made on April 7, 1910. The abstract was to be furnished by October 29 of that year. The essential thing in the contract was the furnishing of an abstract showing a marketable title within a reasonable time, and this date was fixed upon as being in all probability the earliest date at which a decree could be obtained in the lawsuit to be brought and abstract could be furnished. The parties must have had in view the well-known uncertainty of the speedy termination of a lawsuit. A case very much in point is *Beck v. Simmons & Kornegay*, 7 Ala. 71. In that case it was held that, where one has proceeded in a contract for the exchange of land so far as to obtain possession with knowledge of a defect in the title, he cannot afterwards object to the defective title as a reason for not completing the contract, unless there is unreasonable delay in curing the defect. If he knows the defect can only be obviated by judicial proceedings, the time stipulated for the completion of the contract will not be con-

sidered an essential ingredient.    See, also, *Kemper v. Walker*, 32 S. W. (Ky.) 1093.

As to the contention that the abstract tendered does not show a marketable title:    Forty acres of the land stood upon the record at one time in the name of "H. M. Beardsley."    An action to foreclose a tax lien upon the same was brought by Keith county against "H. M. Beardsley" and others.    Service was had by publication, and the action proceeded to decree, sale and sheriff's deed.    The title conveyed to plaintiff by the defendants is based in part upon these proceedings.    After the deed was made, "H. M. Beardsley" conveyed by quitclaim deed to F. P. Radcliffe.    After the contract of sale was made, a quitclaim deed was procured from certain persons describing themselves as the sole heirs of F. P. Radcliffe, deceased, which deed inured to plaintiff's benefit.    There is a deposition in the record to the effect that Radcliffe died in 1911, and that the grantors are his sole heirs.    The objections made to this title by plaintiff are that "an abortive foreclosure for taxes sought to deprive" Beardsley of his title.    No defect in the foreclosure proceedings has been pointed out.    One who has taken possession under his deed, and who seeks to rescind for the reason that the title is defective or not a marketable one, has the burden of pointing out the defects, and a reviewing court will not of its own motion assume the labor of examining abstracts in the endeavor to detect or discover a defect which will vitiate the title.    The cases cited by plaintiff applying to executory contracts do not apply to the facts in this case.

It is next objected that there is no showing that the estate of F. P. Radcliffe was ever probated, where he died, when he died, or whether his debts were ever paid.    It is true these facts are not shown in the abstract, although supplied to some extent by other proof in this case; but if the foreclosure proceedings are valid, as we must presume they are, as the record stands, H. M. Beardsley had been divested of his title before he attempted to convey to

Radcliffe, and the latter took no title. Defects in conveyances from Radcliffe are therefore immaterial.

The judgment of the district court is

AFFIRMED.

1. FAWCETT and HAMER, JJ., not sitting.